## STEVE ALLEN v. THE STATE.

1. EVIDENCE: HEARSAY TO IMPEACH WITNESS. *Improper use thereof.*
     Evidence of statements by witness, admitted for the sole purpose of impeaching him, cannot be considered or used during the trial for any other or different purpose.

2. HEARSAY EVIDENCE TO IMPEACH WITNESS. *Instructions and argument thereon.*
     It is error for an instruction or argument in a case to be predicated upon matters contained in hearsay statements by one who has become a witness, where such statements have been proven merely to impeach the witness.

3. SUPREME COURT PRACTICE. *Error in instructions. Verdict manifestly correct.*
     A verdict of conviction will not be set aside or reversed on appeal for erroneous instructions, if the testimony of the accused himself shows that the verdict was manifestly correct.

FROM the circuit court of Lafayette county.

HON. W. M. ROGERS, Judge.

The opinion recites the facts.

*W. S. Chapman,* for appellant.

66 MISS.—25

The first instruction having reference to previous threats was plainly erroneous and misleading, and must have been very prejudicial to defendant. There was no proof of any threats by the accused. The only mention of threats in the case was in the testimony of Brown, who was allowed to tell what the witness Sadler had told him. But this was merely for the purpose of impeaching the witness. It could not be used for any other purpose. Yet the court granted an instruction based upon it as being evidence of previous threats by the accused.

It was the duty of the court to have interfered and stopped the district attorney when proceeding to comment upon the matter of previous threats, as being in evidence. Defendant's counsel could not object to such argument, because the court had given the instruction over his objection, and it would have been useless. *Cavanah* v. *The State*, 56 Miss. 309.

Thus the most prejudicial fact made use of in the case against appellant is not really in evidence, but as a hearsay statement, which could legally be used for only one purpose, viz.: impeachment of the witness.

*T. J. Wharton*, acting attorney-general, for the state.

The verdict is manifestly correct under the evidence.

The first instruction, which defines malice and its ingredients, follows the standard elementary authorities as to what are the *indicia* of it, or how it is indexed. Express malice is evidenced, among other things, by previous threats. It was competent for the state to prove threats made by the accused, and to do this by the defendant's own witness was allowable. Such evidence cannot be excluded under the rule that a witness cannot be contradicted or impeached on an immaterial matter.

Upon the whole case the verdict is amply supported by the testimony, and a different verdict would do violence both to the law and the evidence.

COOPER, J., delivered the opinion of the court.

For the purpose of considering the principal error assigned, viz.: the perversion by the district attorney of certain testimony, ad-

mitted to impeach the credibility of a witness for the defendant, to establish a relevant and highly injurious fact against the accused, it is only necessary to bring into juxtaposition certain portions of the record.

The deceased was a " section boss " on the Illinois Central Railroad, and the accused was one of the hands working under him. On the morning of the killing the deceased had a difficulty with accused and cursed him and exhibited a pistol. The accused left the road and soon afterward the deceased also left, returning in an hour or two with a gun loaded with " buckshot." He walked up the track, looking down on the ground, and while near the laborers engaged in work, and in a deep cut, he was accosted by the accused, who was on the bank some forty feet above him, who said : " Mr. Hadnott, you cursed me this morning and had a pistol and now you have a gun." Deceased immediately turned in the direction of accused and raised his gun, whereupon the accused shot and killed him.. No witness for the state or the defendant had given any evidence of threats made by accused at the time he left the road in the morning.

A witness for defendant, Sadler, who had given about the same history of the killing as the witnesses for the state, was asked upon cross-examination by the district attorney whether the accused had made a threat on leaving the road in the morning, and replied that he had not. He was then asked if he had not stated to one Brown (the time and place being stated) that Allen (the accused) on leaving the road said " he intended to go home and get his gun and kill Hadnott," and denied having so stated.

Brown was then introduced by the state, and testified that the witness, Sadler, at the time and place named, had made the statement as to the threat by accused. Among the instructions given for the state was the following :

" Malice is of two kinds : one is implied by law from the unlawful use of a deadly weapon. The other is express and is evidenced by previous threats, lying in wait, and assassination ; and it is not necessary that all should be shown by the evidence to exist in a case, but proof of the existence of one is in any particular

case enough to constitute malice essential to constitute the crime of murder."

The fact is certified by the presiding judge that, " The district attorney, in his argument before the jury, urged that the case was one of express malice ; that the defendant left the road that morning with the intention of killing Hadnott, and returned and put such intention into execution. In so doing he commented upon the various points in the evidence, among others, *what Brown said Sadler had said, though Sadler denied it* (italics by this court), and he argued that, looking to the conduct of the defendant when he left the road, his returning with his gun, his position and conduct then, together with all the evidence in the case, the jury could infer he left the road in the morning with the intention of killing the deceased, and returned and effected his purpose. The court did not interfere to stop counsel when he made these remarks, nor did counsel for defendant offer any objection at the time."

Condense these facts, and it appears that Brown was permitted to testify that Sadler had stated to him that Allen had made a certain threat; but this was admitted only to impeach the credibility of Sadler. The court then, in the entire absence of any evidence competent to prove a threat, instructed the jury, *inter alia*, that express malice could be proved by threats, and the attorney for the state argued that Brown's testimony of what Sadler had said was competent evidence to the fact of threats.

We forbear comment. The error is manifest.

But, flagrant though the error be, it cannot avail the appellant. He testified as a witness in his own behalf, and according to his own evidence the verdict is manifestly right. Accepting his account of the killing, this was what occurred : After the difficulty in the morning he went to his home, loaded his gun, and returned to the place where Hadnott was, to *compromise* the difficulty, taking the loaded gun along to protect himself, as Hadnott, he says, was " very mad when I left and a high-tempered man." He did not go along the road for fear Hadnott would shoot him on sight, but went on the bank and accosted him in the words given by the state's witnesses. He stood with his gun on his right side, muzzle downward,

and, upon calling to Hadnott, he (H.) turned and presented his gun, whereupon the defendant, as he says, "leveled his gun at his side, without raising it to his shoulder or taking any aim, and let her go." There can be but one construction of this conduct, and that is that the appellant purposely concealed his approach from Hadnott, secured a position of advantage with his gun ready for instant use, called to the deceased in language not of compromise nor of peace, and as he turned to protect himself fired upon him. Having invited the danger in which he stood, it was murder to kill his adversary, even if his own life was in peril.

*The judgment must be affirmed.*