The State v. Cable.

THE STATE v. CABLE, *Appellant.*

Division Two, June 27, 1893.

1. **Criminal Law**: SELF-DEFENSE: RIGHT OF ASSAILANT TO WITHDRAW FROM COMBAT. Although one may be in the wrong in the first instance in bringing on a difficulty, yet, where he, in good faith, withdraws, as far as he can, from the combat, really intending to abandon the conflict, and his adversary still pursues him, then if taking life becomes necessary to save his own, he will be justified.

2. **Practice**: ERRONEOUS INSTRUCTION NOT REMEDIED BY GIVING COR-
RECT ONE. An erroneous instruction is not remedied by giving a
correct one which is inconsistent and irreconcilable therewith.

*Appeal from Morgan Circuit Court.*—HON. E. L.
EDWARDS, Judge.

REVERSED AND REMANDED.

*D. E. Wray* and *Draffen & Williams* for appellant.

The court committed error in giving the first
instruction asked by the state. The defendant had the
right, even though he had voluntarily engaged in a
difficulty, to withdraw from the combat, and if he did
so in good faith, "and was pursued by the deceased,
and was hard pressed, and was endeavoring to get
away from the deceased, and to abandon the combat,"
then he was not deprived of the right of self-defense,
and there was manifest error in the declaration of the
court to the contrary. It is "the well-settled doctrine
that though a man should be wrong in the first
instance, yet 'a space for repentance is always open,'
and where a combatant, in good faith, withdraws, as
far as he can, really intending to abandon the conflict,
and his adversary still pursues him, then if taking life
becomes necessary to save his own, he will be justi-
fied." *State v. Partlow*, 90 Mo. 608; *Stoffer v. State*, 15
Ohio St. 47; Kelley's Criminal Law, sec. 488; 1
Bishop's Criminal Law [5 Ed.], sec. 871. (2) The
error of the court in giving the instruction, telling the
jury that the defendant was deprived of the right of
self-defense, if he voluntarily engaged in the difficulty,
notwithstanding he had abandoned it before the shoot-
ing, and was pursued by the deceased, and was hard
pressed at the time he fired the fatal shot, is not cured by
the counter-instruction given at the instance of defend-

ant. The instructions were contradictory, and it cannot be known by which the jury was governed. "An erroneous instruction is not remedied by the giving of a correct instruction which ·is inconsistent and irreconcilable therewith." *State v. Herrell*, 97 Mo. 105; *Bluedorn v. Railroad*, 108 Mo. 439; *State v. Clevenger*, 25 Mo. App. 653.

*R. F. Walker*, Attorney General, for the state.

The first instruction for the state correctly told the jury that if the defendant sought, provoked or brought on, or voluntarily entered into, the difficulty with the deceased, which resulted in the killing of Fitts by defendant, then they could not acquit on the ground of self-defense. *State v. Parker*, 106 Mo. 223. Second, third and fourth relate to, and define, murder in the second degree; defendant having been convicted of manslaughter in the fourth degree will not be heard to complain of these instructions, whether they be right or wrong. *State v. Talbot*, 73 Mo. 358. By the fifth instruction given for defendant he had a right to act upon appearances as presented to him at the time, and that if he used no more force than to him appeared to be necessary, then they should find him not guilty, even though the jury might believe that defendant was in no immediate danger. The instructions when read together clearly and fairly present every phase of the case· suggested by the testimony. They are extremely liberal to the defendant in defining, upon his theory and the testimony offered by him, his right of self-defense. He could not have been prejudiced by any of these instructions; on the other hand they were doubtless more responsible for the verdict of manslaughter than was the testimony, which presented a case of murder in the first or second degree.

BURGESS, J.—The defendant was indicted for murder in the first degree, for the killing of Emmett Fitts. When the cause came on to be heard, at the August term, 1892, the state elected to abandon the charge of murder in the first degree, and to proceed against the defendant for murder in the second degree.

A number of witnesses were introduced both by the state and the defendant. There were differences between the witnesses as to the details of the difficulty.

There was evidence before the jury tending to establish the following facts:

That there was a picnic near Gravois Mill, on the eighth of August, 1890, which the defendant and deceased attended. A platform had been built for dancing, and upon one end there was a seat for the musicians; one, George White, and the deceased were furnishing the music; the defendant came up to where they were and engaged in conversation with White, who was an old acquaintance; the deceased took part, and in a short time angry words passed between deceased and defendant. When the quarrel between them had about subsided, George Fitts, a brother of the deceased, came up and said that if there was any fighting to be done he would do it himself, and thereupon the deceased announced that "he was a sure cat himself," and started to rise; the defendant struck him, and, about the same time, he struck defendant with a banjo that he held in his hand; George Fitts also struck the defendant, and he was knocked down; he attempted to rise and was again knocked down.

Deceased, his brother, and defendant, in some manner got off the platform. State's witnesses say that they went off; defendant testifies that he was knocked off. Defendant went off the south side of the platform, ran to the northeast corner, drew his pistol from his inside

vest pocket and fired at Emmett Fitts, shooting him in the right breast, from which wound he died on the twelfth day of August. State's witnesses testify that Fitts was standing still about twenty feet from the defendant when the shot was fired. Defendant contended that Fitts was advancing upon him; that he ran around inside of the platform, and the deceased ran after him; that he was almost out of breath, was worn out, and could not run further; that he saw another brother of deceased coming towards him from the north, with something in his hand; this brother came up a moment or two after the shooting, with a drawn pistol; the defendant testified that he called to the deceased to stop, but he kept on running after defendant, when the latter pulled his pistol and shot him, and from the effects of this wound the said Emmett Fitts died on the twelfth of August, 1890.

Defendant was convicted of manslaughter in the fourth degree and his punishment fixed at two years' imprisonment in the penitentiary. After an unsuccessful motion for a new trial he prosecutes his appeal to this court. The only ground urged for a reversal of the cause is the action of the trial court in giving instructions as follows:

"1. If the jury believe, from the evidence, that the defendant, at the county of Morgan, in the state of Missouri, on the eighth day of August, 1890, sought or provoked, or brought on, or voluntarily entered into a difficulty with the deceased, Emmett Fitts, which said difficulty resulted in the shooting and killing of said Emmett Fitts, by defendant, then the jury cannot acquit the defendant on the ground of self-defense, and this is true, although the jury may further believe that at the time the defendant fired the shot that resulted in the death of the deceased, he was pursued by the

deceased, and was hard pressed and endeavoring to get away from the deceased to abandon the combat.''

It is a well-established rule of criminal law, that, although a person may voluntarily enter into, and engage in, a difficulty, he may abandon the conflict, and if he does so in good faith and is pursued by his antagonist, he may, when hard pressed, although in the first place, the aggressor, if it becomes necessary to take life in order to save his own, he will be justifiable in doing so. If defendant had, in good faith, withdrawn from, and abandoned, the controversy, and deceased pursued him, then defendant was not deprived of the right of self defense, because of having first brought on or voluntarily entered into it.

This instruction is not in harmony with this position and is clearly wrong. If this instruction is the law, then no one who voluntarily enters into a difficulty, or who is the aggressor, dare withdraw therefrom, though he may do so in the utmost good faith lest he be pursued by his adversary, and great bodily harm inflicted upon him or his life be taken by his antagonist, under the guise of self-defense.

In the case of *State v. Partlow*, 90 Mo. 608, SHERWOOD, J., speaking for the court, says: "Though a man should be in the wrong in the first instance, yet 'a space for repentance is always open, and where a combatant in good faith withdraws as far as he can, really intending to abandon the conflict,' and his adversary still pursues him, then, if taking life becomes necessary to save his own, he will be justified. 1 Bishop on Criminal Law [5 Ed.], sec. 871; Horrigan & Thompson on Self Defense, 227; Foster, 276. Sir William Blackstone says: 'When both parties are actually combatting at the time the mortal stroke is given, the slayer is then guilty of manslaughter; but, if the slayer

has not begun to fight, or, having begun, endeavors to decline any further struggle, and afterwards being closely pressed by his antagonist, kills him to avoid his own destruction, this is homicide excusable by self-defense.' 4 Blackstone's Commentaries, 184;" *Stoffer v. State*, 15 Ohio St. 47.

The case of *State v. Parker*, 106 Mo. 217, is not in conflict with the views herein expressed, as that case only decides that one who provokes a difficulty but without any felonious purpose, and during its progress is compelled to take the life of the person whom he attacks in order to save his own, cannot be entirely justified upon the ground of self-defense, but will be guilty of manslaughter in the fourth degree. There was no question as to whether or not the defendant in the case last cited had abandoned or withdrawn from the conflict, and it is not in point.

Nor was the vice of the first instruction cured by the giving of the fourth on the part of the defendant, which announces a converse rule. "An erroneous instruction is not remedied by the giving of a correct instruction which is inconsistent and irreconcilable therewith." *State v. Herrell*, 97 Mo. 105; *Bluedorn v. Railroad*, 108 Mo. 439; *State v. Clevenger*, 25 Mo. App. 653. But a party cannot complain of an erroneous instruction, given at his own instance. *Baker v. Railroad*, not yet reported; *Reardon v. Railroad*, 114 Mo. 385.

As the cause must be reversed and remanded for a new trial, the sixth and seventh instructions given for the state should be so modified as to conform to the views herein expressed. We have been unable to see any objection to the ninth instruction, as the evidence seems to have been sufficiently contradictory to justify the court in giving it.

Reversed and remanded.    All concur.