THE STATE v. VAUGHAN, *Appellant*.

Division Two, November 23, 1897.

1. **Indictment:** IN ENGLISH LANGUAGE: RECORD PROOF. An indictment, which from the circuit clerk's copy appears to be a perfect instrument, will be considered sufficient, although a photographic copy of the original accompanies appellant's brief, and although the objection to the indictment is that it is not written in the English language.

2. ———: ———: MISSPELT WORDS. From the photographic copy of the indictment the words "deliberately," "malice," "aforethought" and "felonious," if read separately and apart to themselves, bear some resemblance to "deliborately," "wolice," "ofaretbaught" and "felenious." *Held*, as the defendant evidently was not misled, the objection is hypercritical; *held*, also, that the formation of one or two letters will not justify a court in striking down a document which the senses show to be valid and sufficient.

3. **Instructions:** ASSUMING THAT DEFENDANT DID THE KILLING. An instruction that tells the jury they *must* convict defendant of murder in the first degree, etc., or acquit him on the ground of self-defense, is *held* erroneous in assuming that the defendant stabbed the deceased, the defendant not having admitted the killing.

4. ———: SELF-DEFENSE: COMBAT WITHOUT FELONIOUS DESIGN. One voluntarily entering into and engaging in a combat with another *without a felonious design*, may abandon the conflict, and if he does so in good faith and is pursued by his antagonist, he may take the life of such antagonist if necessary to save his own, and be justifiable in so doing, or be guilty only of manslaughter even if he do not withdraw from the combat.

5. ———: COMBAT WITH FELONIOUS DESIGN. One who seeks or brings on a difficulty with the design of wreaking his malice upon another, can not avail himself of the plea of self-defense, however sorely he may find himself pressed in the fight.

*Appeal from Osage Circuit Court.*—HON. RUDOLPH HIRZEL, Judge.

REVERSED AND REMANDED.

*W. A. Davidson* and *Ryors & Voshall* for appellant.

(1) The indictment does not charge that the offense was committed feloniously. *State v. Duffenbacher*, 51 Mo. 26; *State v. Emerich*, 87 Mo. 110; *State v. Herrell*, 97 Mo. 105; *State v. Clayton*, 100 Mo. 516; *State v. Fairlamb*, 121 Mo. 137. (2) The indictment is not written in the English language as required by the statute. R. S. 1889, sec. 3240. The indictment does not charge the killing was done deliberately, premeditatedly, and with malice aforethought. You can not torture the word "deliberately" into "deliberately," "wolice" into "malice," "ofaretbaught" into "aforethought." *State v. Meyers*, 99 Mo. 107; *State v. Green*, 111 Mo. 585; *State v. Rector*, 126 Mo. 329; *State v. Fairlamb*, 121 Mo. 137. "Felonious" and "felenious" are not *idem sonans* as held by the trial court. Bouvier's Dic., p. 677. (3) The indictment does not conclude in the manner required by the Constitution, article VI., section 36, and is not saved in this

respect by any rules regarding bad spelling. The word "stote" is a recognized English word of entirely different meaning from the word "State." 10 Am. and Eng. Ency. of Law, p. 548, subdivision g; *State v. Fitzgerald*, 20 Mo. App. 408. (4) Instruction 1 is fatally defective in this: it impliedly tells the jury that the defendant did the cutting, and that unless they believe the act was done in self-defense they must convict him, nor is the error in the first instruction cured by giving a correct instruction, which announces a correct rule. *State v. Herrell*, 97 Mo. 105; *State v. Cable*, 117 Mo. 380; *Bluedorn v. Railroad*, 108 Mo. 439; *Stevenson v. Hancock*, 72 Mo. 612. (5) Instruction 8 is bad. It deprives the defendant of any right of self-defense where he enters into the combat voluntarily, no matter what his intention was when he entered into the combat, nor how hard pressed he became, nor how great his peril. *State v. Herrell*, 97 Mo. 105; *State v. Partlow*, 90 Mo. 608; *State v. Cable,* 117 Mo. 380.

*Edward C. Crow*, Attorney-General, and *Sam B. Jeffries*, Assistant Attorney-General, for the State.

(1) The general rule is that false grammar, wrong spelling or defective rhetoric will severally not render an indictment insufficient. Employing the wrong word, adding a useless one, or substituting one word for another, will be fatal or not fatal, according as it changes or weakens the indictment, so that the meaning will be adequate or inadequate, as the case may be. 1 Bish. Crim. Proc., secs. 348, 356, 509 and 510; 1 Chitty's Crim. Law, 231; *Pierce v. State*, 75 Ind. 199; *State v. Myers*, 85 Tenn. 203; *State v. Fitzgerald*, 20 Mo. App. 409; *State v. Earp*, 41 Tex. 418; *State v. Thomas*, 2 Tex. Ct. App. Rep. 293. (2) Before an objection because of false grammar, incorrect spell-

ing, or mere clerical error is entertained, the court should be satisfied of the tendency of the error to mislead, or to leave in doubt as to the meaning a person of common understanding. 1 Bish. Crim. Proc., secs. 354–357; *State v. Grant*, 50 Ala. 207. (3) Instruction 1 is not defective, because it no more implies· or tells the jury that defendant did the cutting than it does imply or tell them that they must acquit the defendant. (4) Instruction 8 is not bad. In the first place, all the law governing the case can not be stated in one instruction, but it is sufficient if, without conflict, all of the instructions state all of the law. (5) The instructions must be taken as a whole, and if so taken they clearly define the law of the case, it is sufficient. *State v. Berkley*, 109 Mo. 676. (6) Instruction 7, taken together with instruction 8, eliminates the objection to instruction 8 for the reason that it states clearly and accurately the right of self-defense, where one enters into a combat voluntarily without felonious intention. *State v. Nueslein*, 25 Mo. 111; *State v. Partlow*, 90 Mo. 608; *State v. Gilmore*, 95 Mo. 554; *State v. Parker*, 106 Mo. 217; *State v. Berkley*, 92 Mo. 41.

GANTT, P. J.—The defendant was convicted of murder in the second degree in the Osage circuit court at the March term, 1897. His motions for new trial and in arrest were overruled and he has appealed to this court. The indictment, omitting caption and indorsements, is as follows:

"The grand jurors for the State of Missouri, impaneled, charged and sworn to inquire within and for the body of the inhabitants of the county of Osage and State aforesaid, upon their oath, present and charge that one Wm. B. Vaughan, late of the county and State aforesaid, on or about the 12th day of September, 1896, at the county of Osage, in the State of Missouri,

in and upon one Walter Wilson then and there being feloniously, willfully, deliberately, premeditately, on purpose and of his malice aforethought, did make an assault, and with a certain knife which he, the said Wm. B. Vaughan, in his right hand, then and there had and held, him, the said Walter Wilson, feloniously, willfully, deliberately, premeditately, on purpose and of his malice aforethought, did strike and thrust in and upon the right arm, giving to the said Walter Wilson then and there, with the knife aforesaid, in and upon the right arm of him, the said Walter Wilson, one mortal wound, of which said mortal wound the said Walter Wilson, from the 12th day of September, in the year aforesaid, in the county aforesaid, until the 13th day of September, in the year aforesaid, in the county aforesaid, did languish, and languishing did live, on which said 13th day of September, in the year aforesaid, the said Walter Wilson, in the county aforesaid, of the mortal wound aforesaid, died; and so the grand jurors aforesaid do say that the said Wm. B. Vaughan, him, the said Walter Wilson, in the manner and by the means aforesaid, feloniously, willfully, deliberately, premeditately, on purpose and of his malice aforethought, did kill and murder, against the peace and dignity of the State."

The defendant was duly arraigned and plea of not guilty entered in his behalf on the second day of the March term, 1897.

The evidence tends to show that on the night of the twelfth day of September, 1896, George White and Walter Wilson, two young men, had arranged to have a dance for the young people of the neighborhood of Bonnot's Mills in Osage county at the house of one Wicks. These two young men had paid Mr. Wicks for the use of his house and were in charge. To bear the expenses they charged the young men who danced

fifty cents apiece. The evidence tends to show that some days prior to the dance the defendant said these young men were going to get up the party and he was going down and break it up, and if they objected or resisted "he would cut their guts out." He was also seen to sharpen his knife and was heard to say he had some cutting to do. After the party had assembled and the dancing commenced on the evening of the twelfth of September, he came to the house, and accosting White, inquired what it cost to dance, and was told fifty cents. He said he wouldn't pay it and left. Somewhere between 11 and 12 o'clock that night he returned and again asked White what it would cost him to dance, and White answered that as the dance was at least half over he could dance for twenty-five cents. He then said he would pay the twenty-five cents, but White, noticing he was intoxicated, told him he could not dance at all, and put him out of the room. The house had a porch and railing around it with a gateway from the steps into the porch. Defendant went into the yard and began to curse White and Wilson and dare them out. He applied the most opprobrious and insulting epithets, at the same time displaying an open knife, until White, who had come out on the porch, jumped down and knocked defendant down with a blow from his fist. The night was dark and the only light in the yard was produced by hand lanterns. White, after knocking defendant down, left him and came back about the steps when a brother of defendant espoused the quarrel, and he and White had a fisticuff. Soon after this defendant and young Wilson were seen engaged in a personal encounter, and defendant was seen to strike Wilson on his upper arm, and Wilson cried out "Oh! God, he has killed me" or "stabbed me." They clutched each other and continued to struggle until they reached the fence, when

Wilson seemed to have the advantage, and some of the bystanders called out to take Wilson off defendant, and when they interfered Wilson said: "Let me stamp him [meaning defendant]; he has killed me." Thereupon it was discovered that defendant had stabbed Wilson in the upper arm and severed the arteries, and he was rapidly bleeding to death. He was carried into the house and a physician summoned. In the meantime those present attempted to stay the flow of blood, with poor success. The physician came about 2 o'clock in the morning and took up the arteries and tied them and prescribed morphine to produce absolute rest. He went home and came back about 8 o'clock next morning and Wilson died about noon the next day.

The defendant was seen to shut his knife and put it in his pocket soon after he and Wilson were separated.

I. The indictment certified to this court by the clerk is a perfect instrument. This copy contains no misspelt words and it is to this record we must look when the contention is made that the indictment is not in the English language and does not allege the offense to have been feloniously committed. The transcript effectually disposes of these objections. We have, however, attentively examined the photographed copy of the original and hold that the criticism is without foundation. The writer hereof read the photographed copy without knowing the purpose of defendant in sending it up, and before reading the official copy, and was at a loss to understand what objection could be made to the document. The hypercritical objection to the words "*state*," "*feloniously*" and "*malice*" can not be seriously taken. Our respect for the intelligence of the learned counsel who prepared the brief for defendant is such that we can not believe he was for a moment

State v. Vaughan.

misled into believing that any other words were intended by the pleader, and we can not permit a finical taste as to the formation of one or two letters to betray us into striking down a solemn official document which our own senses show to be valid and sufficient. There is no merit in the objection to the indictment.

II.   There was ample evidence to support the verdict of guilty of murder in the second degree, *if not in the first,* and it only remains to examine the instructions of the court.

In the first instruction the court instructed the jury that under the evidence the jury *must* convict the defendant of either murder in the first or second degree, or manslaughter in the third or fourth degree, or acquit him on the ground of self-defense. We think the court erred in assuming that defendant stabbed the deceased. Had the defendant admitted the killing, the instruction would have been correct, but it was the absolute right of the defendant to have the jury determine who in fact stabbed the deceased, and the court could not invade that right by assuming that defendant did it.

III.   The eighth instruction for the State is clearly erroneous in that it deprives defendant of the right of self-defense if he voluntarily entered into the difficulty with deceased, irrespective of his intention in so doing. It is the settled law of this State that one voluntarily entering into and engaging in a combat with another *without a felonious design* may abandon the conflict, and if he does so in good faith and is pursued by his antagonist, he may take the life of his adversary if necessary to save his own, and be justifiable in so doing, or be guilty only of manslaughter even if he do not withdraw from the combat. The instruction would have been unobjectionable had it informed the jury, in addition to what it otherwise contained, that if defend-

ant sought or brought on the difficulty *with the design of wreaking his malice upon deceased* then he could not avail himself of the plea of self-defense, however sorely he might have found himself pressed in the fight.

As was pointed out in *State v. Partlow*, 90 Mo. 608, "the main feature in such cases is the intent with which the accused brought on the quarrel or difficulty; if with no felonious intent, no harboring of malice, no premeditated purpose of doing great bodily harm or killing the person assaulted or with whom the quarrel is begun, then," notwithstanding defendant may have been the aggressor, he may withdraw in good faith from the combat, and if pressed to the wall may kill his adversary to save his own life and be justifiable; or without withdrawing, if he kill his adversary *under such circumstances*, he will be guilty only of manslaughter and not of murder. *State v. Partlow*, 90 Mo. 608; *State v. Cable*, 117 Mo. 380; *State v. Parker*, 106 Mo. 217.

It follows that the judgment must be and is reversed and the cause remanded for a new trial in accordance with the views herein expressed. SHERWOOD and BURGESS, JJ., concur.