PROVOSTY, J.
Defendant was tried for murder, and convicted of manslaughter, with recomm'endation to the mercy of the court. On appeal, the judgment was set aside, and the case remanded for another trial. He was again found guilty of manslaughter, on the second trial, and he has again appealed.
The deceased, Lee Howard, was connected in some way, as part, owner, or otherwise, with the Palace Saloon in the city of Shreveport. He occupied a room in the rear of the barroom. Eor some reason not very clearly explained, he harbored resentment against the defendant. In the early part of the night on which he met his death at the hands of defendant, he used abusive language to defendant, without provocation, and, upon being paid in kind, struck him in the face, knocking him down, so that he fell through the swinging doors, upon the sidewalk outside, breaking the glass of the doors in his course. Defendant got up, his face bruised and bleeding, and went to the back part of the barroom to wash his face. Walter Howard, brother of Lee Howard, went with him to assist him. While they were so engaged, Lee Howard, who was standing by the bar, spoke to defendant, proposing “to make friends; said he had no ill feeling, and would call everything off, and wanted to take a drink and shake hands.” Defendant made no answer, whereupon Howard came to where defendant was, and applied a vile epithet to him, and brandished an open knife, saying to him, “The next time we meet, this will do the work.” Nothing further occurred on this occasion. Defendant went his way out of the barroom. He is a resident of Texas, and was *1026 a stranger in Shreveport. Howard was drinking heavily, and was a quarrelsome and notoriously dangerous man in his cups, and is described as a man “of quick action”; that is to say, capable of swift movement.
The next we hear of defendant is about two hours later, through the testimony of one Blanche Myers, who says:
“It was at Annie McCune’s. He came down to thé house. Did not stay long. Went up stairs to get a drink of water, and went in my room and sat down a little while, and when he got up I seen something under his coat, and I asked him what it was, and he laughed and said. ‘Nothing particular,’ something that he might have to use before morning, but he hoped not.”
About two hours thereafter, and four or five minutes before the homicide, defendant came into the Ralace Saloon, and called for a drink of whisky. The bartender set the whisky and the water on the bar. Defendant “looked around in the saloon and looked around in the poker room,” and asked where was Lee Howard. On being told that Lee Howard had gone to Chamberlain’s Café to get a lunch, and would be back in a few minutes, he took his drink, and, leaving 15 cents on the counter, walked out. His manner indicated excitement. He went straight to Chamberlain’s Café, which is in the same block, only about 150 feet from the Palace Saloon, and there he met Lee Howard, and the homicide occurred.
The person entering Chamberlain’s Café has at his right, as he steps in, a cigar stand, and at his left a long lunch counter. This stand and this lunch counter are six or seven feet from the door, and about the same distance from each other. The lunch counter extends to the back part of the room. How long the cigar stand is the record does not show. Alongside of the lunch counter are stools upon which the guests sit. The passage being so narrow’, the person entering must necessarily pass close to the row of stools.
As defendant entered, Lee Howard was seated on the nearest stool, with his face towards the counter, and therefore with his left side toward the door, and was eating his lunch. The witness Wright was seated next to him at his right, but was through eating his lunch, and had turned his back to the counter. The witness Allen was on the third or fourth stool from Wright. These two are the only witnesses who saw and can testify to the beginning of the difficulty. Both were called by defendant, but the witness Wright had appeared for the state on the former trial.
Wright says:
“Short came in. I called him ‘Slim.’ I says: ‘Lee, here comes Slim.’ Howard immediately wheeled around on the stool, so his back was to the counter. About that time Slim was up to where we were sitting, advancing. At that moment, Lee Howard put out his hand, and says: ‘Hello, Slim, let’s shake hands and be friends.’ And Slim stopped, and said: T do not care to shake hands with you.’ And as he made that remark, Howard says: ‘You intend to carry the trouble of this evening further. You are a damn bitch.’ As he made this remark, he reached with his right hand and felt of Slim’s right hand, and says: ‘You have got a knife.’ While doing this, he was reaching with his left hand back for the syrup pitcher. Right then and there Short made a move to get a gun. Howard made the remark to him: ‘You have got a gun.’ When Howard got the syrup pitcher in his hand, he hit him with it on the side of .the head, over the eye. Short’s right hand, when Howard was feeling of it, was hanging down. Short opened his band and said he had no knife. Howard’s reaching for the syrup pitcher 'with his left hand and Short’s movement to draw a weapon were virtually simultaneous, the same instant. The struggle began at once. In trying to get away, I fell to the floor and was trying to get away as rapidly as possible, and just as I went to get on my feet the shot was fired. Q. Mr. Wright, do you recall whether or not, after Lee Howard said to defendant, addressed those remarks to him, whether or not Mr. Short, a moment or two after that, seemed to be backing back, or going towards the door? A. Back, back towards the door. Q. Can you recall now what Howard said to him about that time? A. He said he knew he had a gun and was not afraid of his God damn gun.”
The witness Allen says that:
“Just as Short stepped in, he leaned up against the cigar stand, and was resting with his arms on the cigar case when Howard began to talk. *1028 Howard said: ‘Let’s call this matter off,’ and Short says: ‘No, we better go on like we are. You attend to your business, and I will attend to mine.’ Then Howard says: ‘Why will you not do it.’ And Short says: T have a reason.’ Howard says: ‘What is your reason?’ By that time, Howard cursed Short for a damn son of a bitch, and reached over and grabbed at a tooth pick stand, and threw it at Short. Then they clinched. Short knocked Howard down twice, and as Howard was getting up, Short reached in his hip pocket and got his gun. Just then I ran upstairs and heard the gun.”
Other witnesses testified but not to the beginning of the difficulty. This other evidence was to the effect that when the fatal shot was fired Howard had fallen and was on the floor; that defendant walked around him, from his feet to his head, and fired into him.
The charge of the court, leaving out the mere formal part, was as follows:
“(1) Mere threats to kill or do great bodily harm, though communicated to the party threatened, will not justify an assault on the party uttering the threats, in the absence of some overt act by the party threatened, evincing a purpose to make good his threats.
“(2) The party thus threatened is not required to await the actual delivery of the blow. Any overt act, such as drawing a weapon, evincing a purpose to strike or use the weapon, will justify the person thus menaced in acting, without awaiting the actual delivery of the blow. The refusal to acknowledge an introduction or to shake hands with a person offering to do so may be very offensive to the victim of such breaches of social amenity, still these breaches do not constitute a legal provocation for a blow or assault.
“(3) A persop assaulted has the right of defending himself, repelling force with force as far as it may reasonably appear to him to be necessary to protect his life, or his body, from great harm. The danger to his life or person may not be real. The law is that if a person is assaulted in such a way as to produce in the mind of a reasonable person a belief that he is in actual danger of losing his life, or of suffering great bodily harm, he will be justified in defending himself. Although the danger be not real, but only apparent, such a person will not be held responsible criminally if he acts in self-defense, from real and honest conviction as to the character of the danger, induced by reasonable evidence, although he may be mistaken as to the extent of the actual danger.
“(4) But it is well settled in law that the defendant cannot avail himself of the necessity of that defense, if same was brought about by his own deliberate and lawless acts, or by beginning the fight with the deceased, for the purpose of taking his life, or committing a bodily harm upon him, in which he killed deceased by the use of a deadly weapon, unless the defendant had really and in good faith endeavored to decline any further struggle before the shot was fired.
“(5) Following these precepts of the law, I charge you that if, from the evidence, you believe beyond a reasonable doubt that the defendant armed himself with a deadly weapon with the intention of taking life, or of doing great bodily harm, sought him, and brought on a difficulty with him, he cannot avail himself of the right of self-defense, unless it is shown that, before he fired the fatal shot, he endeavored in good faith to decline a further struggle. But I also charge you that, although you may find that defendant did arm himself and seek the whereabouts of Howard with the deliberate intention to take his life, or do him some great bodily harm, if, at a place he had a right to be, his adversary suddenly and without legal provocation made an assault upon him, which a reasonable man in his position would have the right to believe, and did believe, placed him in imminent danger of great bodily harm, he would have the right to defend himself, and be justified therein.
“(6) I further charge you that if, from the evidence, you believe beyond a reasonable doubt that the defendant sought or brought on, or voluntarily entered into, a difficulty with the deceased for the purpose of wreaking vengeance upon him, or you should believe that he shot and killed deceased, at a time when he had, because of the acts or condition of deceased, no reasonable apprehension of immediate and impending injury to himself, and did so from a spirit of retaliation and revenge for the purpose of slaying the deceased for past injuries done him (the defendant), then the defendant cannot avail himself of the law of self-defense, and you should not acquit him on that ground. No matter how great the danger or imminent the peril to which the defendant may have believed himself to have been in during such difficulty, the right of self-defense is allowed to the citizen as a shield, not as a sword.
“(7) I further charge you that if you believe from the evidence, beyond a reasonable doubt that if, at the time in the altercation between defendant and deceased, defendant being suddenly assaulted by the deceased under such circumstances, that gave him the right of defending himself, honestly feeling that his life was in imminent danger, if you find that, when he fired the shot, such danger had passed, or the reasonable and apparent danger had passed, and that he had deceased in such position that he could protect himself without taking the life of deceased, it was his duty to do so, and if', after all reasonably apparent danger had passed, he fired the shot, he should be held without justification for killing deceased, and should be found guilty.”
Defendant objected to the charge on the following grounds:
“(1) Defendant excepts to all those parts of the charge submitting the doctrine of defendant *1030 provoking the difficulty, because defendant contends that there was no evidence that raised such an issue; that there was no evidence that defendant did any such act or spoke any such words that were reasonably calculated to provoke a difficulty; that all the evidence showed that deceased spoke the first words, and struck the first blow, and that no witness claimed that defendant used the first hostile demonstration, and that the charge submitting said matter was without evidence to raise or support it — henee prejudicial error.
“(2) That defendant excepts to the form of the charge on defendant provoking the difficulty, because the same was on weight of the evidence and prejudicial ■ to the defendant, because all those parts of the charge on.said question were in an argumentative form, and gave undue prominence to the state’s contention, and did not sufficiently state defendant’s defenses. That the charge of the court on defendant’s right of self-defense depending on defendant’s withdrawing from the difficulty is on weight of the evidence, being argumentative in form and prejudicial to defendant.”
Taking up, first, for consideration the first of these grounds of objection, we find that the charge is said to be argumentative because it sums up the contentions of the prosecution, and gives them to the jury as the law of the case; and that this is done notably by paragraph 5 of the charge, wherein it is said that the defendant cannot invoke self-defense if he armed himself with a deadly weapon with the intention of taking life, or of doing great bodily harm, and sought out the deceased and brought on the difficulty with him.
We fail to discover any argumentativeness either in the form or in the substance of this charge. It appears to us to be but a repetition of what is found in the books on the subject of provoking a difficulty.
Recurring to the other, or first, ground of objection, it is sought to be supported by a two-fold contention: First, that there was no evidence tending to show that defendant had provoked the difficulty, and that, such being the case, the giving of any charge whatever in that connection was erroneous, and that it was prejudicial, in that it was calculated to create upon the minds of the iury the impression that the acts of the defendant as proved might in law constitute a provoking or bringing on of the difficulty; and, secondly, that the charge as given does not state correctly or sufficiently the law of provoking a difficulty, in that it does not explain to the jury what is meant in law by bringing on or provoking a difficulty, and does not furnish the jury the proper, or in fact any, test for determining whether or not the acts of defendant as proved amounted in law to the provocation of a difficulty.
In support of these contentions, it is argued that, in order that the defendant should be held to have brought on or provoked the difficulty, it does not suffice that he should have armed himself and sought out the deceased, but that, after having come into his presence, he should have used language or done acts reasonably calculated to provoke the deceased into an attack upon him, and that the judge should have explained this to the jury, as otherwise there was danger of their erroneously concluding that the mere acts of the defendant in arming himself with a dangerous weapon and seeking out the deceased amounted in themselves to provoking or bringing on a difficulty, even though after coming into the presence of the deceased the defendant had not by word or act done anything to provoke a difficulty.
There can be no doubt that a man has the right to arm himself in his own proper defense, and to be as free to go where he will after having thus armed himself as he would be if unarmed, and that his said right is not abridged by the fact that he has had a difficulty and runs the risk of meeting his late adversary; nor is he precluded from going to any place where otherwise he would have the right to go, simply by the fact that he knows his late adversary is there, and may take offense at his presence; but we do not think that in considering what acts of a defendant who has armed himself and sought out his late adversary will or will *1032 not amount to bringing on, or provoking, a difficulty, a sharp line of demarcation can be established between those acts which occurred before and those which occurred after the parties have come into presence. The question of whether the defendant is responsible for the difficulty having begun is simply one of fact, and hence every case has to be determined from its own facts. If a man who has had a difficulty with another seeks out his late adversary for the sole purpose of renewing the difficulty under circumstances that make it highly probable, or practically certain, that their mere meeting will be a signal for the renewal of hostilities, and after having come into his presence does nothing to indicate an intention of avoiding further trouble, and the combat is immediately renewed, and in the course of it he kills his late adversary, he cannot be permitted to plead necessity in justification of his act. Now whether, under all the circumstances of this case, defendant’s appearing as he did, or his attitude, at Chamberlain’s Café, was of itself thus calculated to furnish occasion for or bring on a difficulty, the learned judge a quo, by his charge, left with the jury to determine. His charge leaves it to the jury to determine whether the conduct of the defendant brought on or provoked the difficulty. Defendant had parted with the deceased under circumstances which left no room for doubt that hostilities between them were but suspended and would be renewed at their next meeting. Knowing this, defendant armed himself and went to the Palace Saloon, where deceased lodged, or had his place of business, looking for the deceased, and there searched for him. His manner indicated excitement. Not finding him there, he sought him elsewhere. Finding him, he did not endeavor to avoid him, but walked up to him and stopped. This could mean only one of two things: Explanation or reconciliation; or else renewal of hostilities. By rejecting the proffer of a peaceful solution, defendant, under the circumstances, virtually renewed the hostilities.
The law in this connection we find stated in Wharton on Homicide (3d Ed.) as follows:
“Where any pretext, design, contrivance, fraud, or excuse is resorted to, to bring on a difficulty, or to provoke the occasion for one, the person using it will be regarded as the aggressor therein, and any act of a person by which he puts himself in the way of being assaulted, in order that, when hard pressed, he may have a pretext for taking the life of his assailant, amounts to bringing on a difficulty. Nor is it necessary that the means used should have been such as were reasonably calculated to provoke a difficulty. If the accused intended to provoke a difficulty, and used such means as he thought would provoke it, and they did provoke it, it is all that is necessary. And it has been held that, where one does an act the reasonable and natural consequence of which is to provoke a difficulty, he is responsible for the result, though he did not intend to do so.” Section 323, p. 516.
“One who arms himself with a deadly weapon and enters into a difficulty with the intention of taking life, if necessary, will be deemed to have brought on the difficulty, and cannot successfully plead self-defense. And the rule is the same where he does it in order to wreak his malice. And the act of a person of arming' himself, taken in connection with other acts showing beyond question his intention to make use of them immediately when opportunity occurs, sufficiently shows him to be an aggressor.” Section 324, p. 519.
From the elaborate and. admirable note to Foutch v. State of Tennessee (Tenn.) 45 L. R. A. 687, we make the following excerpts:
“In considering the question who is the aggressor, it is important to discover how far a person can go without his acts being construed so as to fix upon him the liability or penalty. The mere fact that the accused seeks the deceased is not alone sufficient to deprive him of his right, for, as stated by the court in the recent case of Airhart v. State, 40 Tex. Or. R. 470, 51 S. W. 214, 216 (76 Am. St. Rep. 736), the accused is to be tried, not merely for his act in seeking the deceased, but for his acts after he finds him. 1-Iis intention in seeking the deceased or other party may be perfectly lawful. It may be for the mere purpose of having a friendly talk in order to settle previous difficulties and troubles or it may be to prevent a trespass upon his property, and in such cases the mere fact that he did seek the deceased for the purpose of settling the previous trouble is not evidence that he provoked the difficulty. His intention in such cases, in the first instance, is perfectly honest and just, and maj be necessary *1034 in order to accomplish that to which he has a perfect legal right. On the other hand, if he enters into the difficulty or provokes the occasion with the purpose and intention of wreaking his malice, if he has premeditated the act and enters upon it with the preconceived intention of doing the other party an injury, his right of self-defense is gone.
“In all cases, therefore, where the accused has brought on or provoked the difficulty, the nature of the extremity to which he is reduced in the combat is of no consequence in considering the question of self-defense. State v. Davidson, 95 Mo. 155, 158, 8 S. W. 413; State v. Talmage, 107 Mo. 543, 561, 17 S. W. 990; State v. Partlow, 90 Mo. 608, 4 S. W. 14, 59 Am. Rep. 31; State v. Vaughan, 141 Mo. 514, 521, 42 S. W. 1080; State v. Gamble, 119 Mo. 427, 432, 24 S. W. 1030; State v. Hopper, 142 Mo. 478, 483, 44 S. W. 272; Saens v. State (Tex. Or. App.) 20 S. W. 737; Cunningham v. State, 17 Tex. App. 89, 96; Vernell v. State, 26 Tex. App. 56, 67, 9 S. W. 65; White v. State, 23 Tex. App. 154, 164, 3 S. W. 710; State v. Hill, 20 N. C. 629, 34 Am. Dec. 396, 397; State v. Hawkins, 18 Or. 476, 481, 23 Pac. 475; Honesty v. Com., 81 Va. 283, 298; State v. Peak, 85 Mo. 190, 192; Jones v. Gale, 22 Mo. App. 637; State v. Shoultz, 25 Mo. 128, 153; State v. Lewis, 118 Mo. 79, 23 S. W. 1082; People v. Hecker. 109 Cal. 451, 42 Pac. 307, 30 L. R. A. 403; Bush v. People, 10 Colo. 566, 575, 16 Pac. 290; Stoffer v. State, 15 Ohio St. 47, 86 Am. Dec. 470, 473.
“And the plea of self-defense will not avail the accused where his acts are most clearly calculated to produce the occasion of provoke the difficulty, especially when, taken in connection with the conduct of his accomplice in the crime, he is committing, or intends to commit, at the time when found by the deceased. Franklin v. State, 30 Tex. App. 628, 641, 18 S. W. 468.
“The act or deed of the accused which will deprive him of his plea of self-defense is his act or fault in seeking and directly bringing about the occasion which results in the offense with which he is charged. Hash v. Com., 88 Va. 172, 13 S. E. 398.
“And any pretext, design, or excuse resorted to by the accused in order to bring on the difficulty or provoke the occasion, or his use of a deadly weapon, will make him the aggressor, and amount to provoking the difficulty. Mitchell v. State, 60 Ala. 26, 33; People v. Hecker, 109 Cal. 451, 42 Pac. 307, 30 L. R. A. 403.
“Any act of his which shows that he induced the difficulty through fraud, contrivance, or fault on his part will amount to bringing on the difficulty, and under such circumstances he cannot justify his acts under such a plea. Mitchell v. State, 60 Ala. 26, 33.
“And if it is shown that he sought or induced the difficulty as a pretext for wreaking his malice, he will bo taken to have provoked the occasion. State v. Jones. 78 Mo. 279, 285; White v. Maxcy, 64 Mo. 552; State v. Christian, 66 Mo. 138; State v. Starr, 38 Mo. 270; State v. Linney, 52 Mo. 40; State v. Underwood, 57 Mo. 40; Jones v. Gale, 22 Mo. App. 637, 638; State v. Culler, 82 Mo. 623; State v. Maguire, 69 Mo. 197, 200; State v. Parker, 106 Mo. 217, 17 S. W. 180; State v. Aaughan, 141 Mo. 514, 42 S. W. 1080; State v. Herrell, 97 Mo. 105, 110, 10 S. W. 387, 10 Am. St. Rep. 289; State v. Hays, 23 Mo. 287; State v. Packwood, 26 Mo. 340; State v. Partlow, 90 Mo. 608, 4 S. W. 14, 59 Am. Rep. 31; State v. Berkley, 92 Mo. 41, 4 S. W. 24; State v. Gilmore, 95 Mo. 554, 8 S. W. 359, 912; State v. Parker, 90: Mo. 382, 9 S. W. 728; State v. Brown, 63 Mo.. 439, 433; State v. Cable, 117 Mo. 380, 22 S. W. 953; State v. Vansant, 80 Mo. 67, 09; Adams v. People, 47 Ill. 376; Allen v. Com., 86 Ky. 642, 6 S. w. 645; Thumm v. State, 24 Tex. App. 667, 701, 7 S. W. 236; Hollis v. State, 8 Tex. App. 643.
“So, he who brings on the difficulty or produces the occasion where he induces the conflict under a pretext for stabbing the deceased. Stewart v. State, 1 Ohio St. 66, 74.
“And the.act of the accused in arming himself, when taken in connection with other acts of his showing beyond question his intention tO' make use of them immediately the opportunity occurs, undoubtedly makes him the aggressor,, and amounts to provoking the difficulty, and thus deprives him of the right of self-defense. Beard v. State (Tex. Cr. App.) 29 S. W. 770, 771.
“And the act of the accused in voluntarily going off and arming himself in order to renew the • difficulty, and in returning, was held to amount to provoking the difficulty, in Murry v. State, 36 Tex. 642, in which case there had been a previous difficulty between the parties, and the deceased had prepared himself for the second meeting.
“And where the accused started a quarrel, and upon retreating swore that he would fix the other party, and came back later and renewed the quarrel by refusing to pay for liquor which he had purchased, and seized his‘revolver and shot and killed the deceased, his acts provoked the difficulty and barred his right of self-' defense. State v. Crawford, 115 Mo. 620, 22 S. W. 371.
“And the act of the accused in returning to the scene of the difficulty after the same has ended, for the purpose or with the intention of renewing or provoking it, with a preconceived intention to kill, will amount to provoking the subsequent difficulty, and bar his right of self-defense, in the absence of evidence showing that he declined the combat or retreated. Johnson v. State, 26 Tex. App. 631, 641, 10 S. W. 235.
“And the fact that the accused started for the deceased, who was on the other side of the street, and that the latter threw his hand u£ to his breast pocket, whereupon the accused fired the fatal shot, constituted him the aggressor and provoked the occasion, in Lawrence v. State, 36 Tex. Or. R. 173, 179, 36 S. W. 90, and barred his right of self-defense, as, even if the deceased had a pistol and was about to draw it, such *1036 a fact would not make out a case of self-defense in the accused.
“And the acts of the accused in unlawfully removing an obstruction in a hostile manner and in violation of the peace were held to have ■provoked the attack made upon them by the 'Other party, who charged them with an assault with intent to murder, and the right of self->defense was therefore barred. State v. White, 18 R. I. 473, 480, 28 Atl. 968.
“And the same rules apply in cases in which the accused seeks the deceased with the intention to provoke a difficulty or commit a felony, and carries his plans into effect, as the right of self-defense which will justify homicide cannot avail in any case where it appears that the difficulty was sought for at the time and place by the party with such intention. The fact that the accused has sought the deceased for the purpose of the difficulty and then brought it on amounts to provoking the same. Tesney v. State, 77 Ala. 33, 40; State v. Benham, 23 Iowa, 154, 92 Am. Dec. 417, 420; State v. Neeley, 20 Iowa, 108; State v. Stanley, 33 Iowa, 526, 532; Allen v. Com., 86 Ky. 642, 648, 6 S. w. 645; Bohannon v. Com., 8 Bush (Ky.) 481, 8 Am. Rep. 474, 479; Com. v. Barnes, 16 S. W. 457, 13 Ky. Law Rep. 163; Parris v. • Com., 14 Bush (Ky.) 362 ; State v. Scott, 41 Minn. 365, 375, 43 N. W. 62; Thompson v. State (Miss.) 9 South. 298; State v. Brown, 63 Mo. 439, 443; State v. Rider, 90 Mo. 54, 1 S. W. 825; State v. Herrell, 97 Mo. 105, 109, 10 S. W. 387, 10 Am. St. Rep. 289; State v. Hawkins, 18 Or. 476, 23 Pac. 475; Roach v. State, 21 Tex. App. 249, 254, 17 S. W. 464; People v. Hite, 8 Utah, 461, 477, 33 Pac. 254; Hughes v. People, 116 Ill. 330, 335, 6 N. E. 55.
“Thus, if he seeks the deceased at the latter’s place of business with the intention of provoking a difficulty, and a difficulty ensues in which he inflicts the injury upon the deceased, the occasion is induced by him, and his plea of self-defense is barred. State v. Brown, 63 Mo. 439, 443.
“So the accused may provoke the difficulty by voluntarily returning to the vicinity in which the deceased is with a deadly weapon for the purpose of renewing a difficulty. State v. Neeley, 20 Iowa, 109, 115; Allen v. State, 66 Miss. 385, 6 South. 242; State v. Crawford, 115 Mo. 620, 22 S. W. 371; Rogers v. State, 95 Tenn. 448, 453, 33 S. W. 563; Johnson v. State, 26 Tex. App. 631, 641, 10 S. W. 235; State v. Hudson, 59 Mo. 135, 138.
“And it was held that one who stopped at <the show of the deceased in order to quarrel with him provoked the difficulty, as he was not acting lawfully in so doing and could not avail himself of the plea of self-defense in killing the 'decedent if he then killed him, even though such ■killing might have been necessary in order to ¡preserve his life or his person from an imminent and enormous injury. State v. Murdy, 81 Iowa, 603, 614, 47 N. W. 867.
“In a case in which the parties were not on friendly terms, and when they met the accused addressed the deceased, and claimed that the deceased then put his hand in his pocket, whereupon the accused then produced his pistol and fired, the latter provoked the occasion, and as the evidence showed that he armed himself and sought the deceased with the intention of provoking the difficulty, and that he expected it might be deadly. State v. Hawkins, 18 Or. 476, 23 Pac. 475.
“Where the accused followed the deceased, and accosted him in relation to a previous difficulty, he brought on and was the aggressor in the difficulty, as he was not in any real or apparent danger which he could not easily and safely have avoided by retreat. Rutledge v. State, 88 Ala. 85, 89, 7 South. 335.
“And in all cases of this description the mere fact that the deceased strikes the first blow or fires the first shot, or throws his hand to his pocket as if to produce and use a deadly weapon, will not affect the position of the accused when his intention is to inflict the injury (Adams v. State, 35 Tex. Or. R. 285, 295, 33 S. W. 354) ; in which case the intention was to kill the deceased if he did question the conduct of the accused or mentioned a certain matter. To the same effect: Davis v. State, 92 Ala. 20, 28, 9 South. 616; State v. Neeley, 20 Iowa, 109, 115; Allen v. State, 66 Miss. 385, 6 South. 242; State v. Crowford, 115 Mo. 620, 22 S. W. 371; Rogers v. State, 95 Tenn. 448, 453, 33 S. W. 563; Johnson v. State, 26 Tex. App. 631, 641, 10 S. W. 235; State v. Hudson, 59 Mo. 135, 138; Levy v. State, 28 Tex. App. 203, 12 S. W. 596, 19 Am. St. Rep. 826; State v. McDaniel, 94 Mo. 301; Myers v. State, 62 Ala. 599; State v. Scott, 41 Minn. 365, 373, 43 N. W. 62; State v. McDonald, 67 Mo. 13, 18; State v. White, 18 R. I. 473, 480, 28 Atl. 968.
“And one who arms himself and seeks another for the purpose of an affray or an altercation, and thus provokes and urges on the difficulty to a point where there is an appearance of an attempt to use deadly weapons, provokes and brings on the difficulty, and he cannot claim that he acted in self-defense simply on the ground of apparent danger, as he is the active cause of such danger, and must abide by the condition of things which his own lawless conduct has produced. State v. Hawkins, 18 Or. 476, 481, 23 Pac. 475.
“And the question whether a party has the right to arm himself and go to the place of the homicide is said to depend upon circumstances. There is no question, however, but that he has not the right to arm himself and seek the deceased and kill him. Thomas v. State (Tex. Or. App.) 51 S. W. 1109.”
The defendant requested the court to give the following special charges:
“(1) Xou are instructed that if you find from the evidence that the defendant armed himself with a pistol on the night of the homicide and went to Chamberlain’s Café, where deceased was, *1038 and a difficulty took place between deceased and defendant, in which defendant killed the deceased, and you further find and believe from the evidence that the deceased first assaulted the defendant, and that the defendant believed that he was about to suffer death, or serious bodily harm, at the hands of the deceased, and that under such circumstances the defendant killed the deceased in what he believed to be his own necessary self-defense, from actual or apparent danger, then he would not be guilty of any offense, unless you find and actually believe from the evidence beyond a reasonable doubt that at said time the defendant did something reasonably calculated to provoke the deceased into an attack upon him, or with the intention of bringing on the difficulty, and if you have a reasonable doubt on this issue, you must give the defendant the benefit of such doubt. If you find that defendant did something at said time not entirely free from wrong, but that it was not intended by the defendant to bring on the difficulty, nor reasonably calculated to bring on a difficulty, but that nevertheless the deceased attacked defendant, then the defendant’s right of self-defense would be perfect, and in determining his issue you will look at all the facts and circumstances in evidence.
“(2) You are instructed that if you believe and find from the evidence that, at the time of the homicide, the defendant killed the deceased because he believed it was necessary in his own defense, then you are instructed that defendant had the right to defend himself from the appearances of danger, although the danger might not have been actual, and if you find and believe from the evidence that defendant acted in what he believed to be his necessary self-defense, then he had the right to shoot until he believed all danger had passed, and in this connection the court instructs you that you must view the facts, circumstances, and situation from the standpoint of the defendant at the time of the homicide, as the same appeared to him at said time.
“(3) You are instructed that if you believe and find from the evidence that, at the time of the homicide in this case, the deceased had made an assault upon the defendant producing pain or bloodshed, and was in a straggle with the defendant at the time, and you further believe that deceased was trying or in the act of inflicting death or serious bodily harm upon the defendant, then the court instructs you that defendant had the right to defend himself from actual or apparent danger, and, if you believe that under the circumstances the defendant shot and killed the deceased, he would be justifiable in such act, and w'ould be entitled to a verdict of not guilty.”
For refusing to give these special charges, the learned judge a quo assigned as his reason that the first, in so far as it had his approval, was covered by the general charge, and that the second and third were covered by the general charge. 1-Ie might have added that the first and second were defective, in that they substituted the belief of the accused to the reasonable ground of belief required by the law. This of itself would have been good ground for refusing to give the charge, since the judge is not required to revise a charge requested to be given, but may reject it in whole if found to be in any respect objectionable.
We think these charges, in so far as they conform with the views expressed in this opinion, were covered by the general charge.
The first of the special charges was properly rejected for the further reason that a charge that the defendant could not be held to have provoked the difficulty, unless, after he had come into the presence of the deceased, he had done or said something reasonably calculated to provoke a difficulty, might, under the peculiar circumstances of the case, have been misleading, by the assumption which it makes that the difficulty could not have been provoked by the mere act of the defendant in seeking out the deceased for the purpose of bringing on a difficulty, and occupying, after he had come upon him, such a position or attitude as, under the peculiar circumstances of the case, was provocative of a difficulty. It may be well to add, in this connection, that the testimony which, in answer to a leading question, the witness Wright gave, to the effect that the defendant backed towards the door, is in direct conflict with the rest of his testimony, unless it is taken to mean that the backing towards the door was after the struggle had begun.
Defendant offered to prove that he had won money at cards from deceased, and that the deceased bore him a grudge for it. This evidence would only have been cumulative, as it could only have shown, what otherwise abundantly appeared, that for some *1040 cause or other the deceased harbored a grudge against defendant.
Judgment affirmed.
MONROE, J., concurs.