JUDGE HINES
delivered .the opinion of the court.
Appellant was convicted of the murder of Robert Land, and his punishment fixed by the jury at death. From that verdict and the sentence of the court thereon he appeals.
On the 27th day of May, 1878, near the town of Lancaster, Robert Land, a white man, very much intoxicated, had a difficulty with some negroes; and while he was attempting to draw his pistol to shoot one of them, and being held by a negro named Leavell, the appellant, a colored man, approached Land and said to Leavell, “ Turn the God damned son of a bitch loose; let him go to hell.” To this. Land said, “Are you talking to me, you son of a bitch ?” Appellant replied, “Yes,” when Land turned toward him and drew or attempted to draw a pistol. Appellant struck him with a small walking-cane and ran, and as he did so Land shot at him .without hitting him, and, according to some of the witnesses, threw a rock. Appellant went some seventy-five yards down the *366 road to the house of another negro and said, “Give me your gun, quick; I want to shoot a white man up the road who shot at me,” and, having obtained the gun, ran back in the direction of where he left Land, and when within some fifty yards of the place he said, “ God damn you, where are you ?” and fired upon Land and shot him through the body, from which he died in twenty minutes. While appellant was gone for the gun Leavell had succeeded in putting Land on his horse, with a view of getting him to go home. Some of the witnesses say that when appellant came back with the gun and called out to Land, “God damn you, where are you?” Land turned toward him and presented his pistol. The evidence is that appellant was about two minutes in getting the gun and returning to the vicinity of the difficulty. The bill of evidence does not disclose whether there had been any previous ill feeling between appellant and Land, or whether, in fact, they had ever before met. Quite a number of negroes witnessed the killing, but it appears that no white person other than Land was present.
Objection is made to the first, second, and fourth instructions given for the Commonwealth. They undertake, among other .things, to give the jury the law of self-defense as applicable to the facts of this case. They appear to be much more favorable to appellant than the law will justify. The first tells the jury that they must acquit if they find that appellant “believed and had reasonable grounds to believe that he was in imminent danger of loss of life or of suffering great bodily harm at the hands of said Land.” They were not told, as they should have been, that the right to kill was dependent upon the further fact that there were no other apparently safe means of escape from the then impending danger.
The instructions given at the instance of counsel for appellant are as favorable to him as the law will permit, and *367 give to him the full benefit of the law of self-defense and of manslaughter.
Nor do we think the court erred in refusing to give instruction “A” asked for by appellant’s counsel. The court had already told the jury what facts must be established by evidence, that excluded every reasonable doubt, before they could convict, and these instructions were so drawn as to make it clear to the most ordinary mind that they should not convict if they had a reasonable doubt as to whether the evidence established any one of these facts.
Complaint is made that counsel for the Commonwealth was permitted to argue to the jury the law of manslaughter, as stated by himself, and not as embraced in the instructions. The bill of exceptions says that these statements wex-e made in response to a statement by counsel for appellant, as to his understanding of the law upon the same subject. It appears that counsel for appellant objected, privately to the judge, to the statement of the law by counsel for the Commonwealth, and that the judge said he thought the argument legitimate, but that if counsel desired, he would tell the jury that they must be governed entirely by the law as given them in the written instructions. To this suggestion from the court appellant’s counsel made no response, and nothing was said to the jury about the matter by the court. We are not prepared to say that the argument of counsel for the Commonwealth, under the circumstances, was improper, but if it was, we are of the opinion that no sufficient objection was made and preserved.
It is also objected that there was no arraignment of the appellant. The affidavit of appellant appears to that fact, but the bill of evidence shows that an arraignment was waived, and that appellant pleaded not guilty. The record is conclusive of this point, and prevents any inquiry into its correctness.
It does not appear that appellant could have been prejudiced by the court permitting counsel for Commonwealth to *368 talk with the witnesses after they were sworn and separated, as the same permission was granted to and exercised by counsel for appellant. The Commonwealth’s witness talked to by its counsel was afterward talked with by counsel for appellant, and introduced in his behalf.
As to whether appellant was guilty of murder or manslaughter, or whether he was guilty of either offense, was a question exclusively for the jury, upon proper instructions as to the law given by the court. We have no power to inquire whether the court erred in overruling a motion for a new trial, as we have decided in Terrell v. Commonwealth, 13 Bush; Kennedy v. Commonwealth, 14 Bush, 340, and in Frazier v. Commonwealth, MS. opinion, Nov. 21, 1878.
The third instruction, given at the instance of the counsel for the Commonwealth, is complained of by counsel for appellant upon the ground that without modification it was calculated to and probably did mislead the jury. It reads:
“ Malice is implied by the law from any cruel and unnecessary act done by one person to another, and from the deliberate and unnecessary use of a deadly weapon.”
A careful consideration of this instruction, when applied to the facts of this case, has led us to the conclusion that the objection to it is well taken. The proposition as stated does not appear to accord with the reason and philosophy of the law as found in our statutes and Code, nor, in fact, to have been approved by the later adjudications in other states.
Punishable homicides, under the General Statutes of this state, are described and provided for as follows:
“ If any person be guilty of willful murder he shall be punished with death, or confinement in the penitentiary for life, in the discretion of the jury.”
“Whoever shall be guilty of voluntary manslaughter shall be confined in the penitentiary not less than two nor more than twenty-one years.”
*369 Section 180 of the Criminal Code provides, that “Issues of law shall be tried by the court; issues of fact in prosecutions, for offenses of which the punishment is limited to a fine of $16, shall be tried by the court. All other issues of fact shall be tried by a jury.”
It is further provided in sections 225,- 238, 239, and 258,
That the court must instruct the jury in writing on the law applicable to the case;
• That, if there be a reasonable doubt of the defendant ber ing proved guilty he is entitled to an acquittal;
That, if there is a reasonable doubt of the degree of the offense committed, the conviction shall be of the lower degree;
That, when there is a verdict of “ guilty,” or “ for the Commonwealth,” the jury shall fix the degree of punishment to be inflicted, unless it be fixed by law.
In reference to the burden of proof the correct rule is well stated in Wharton’s American Criminal Law, section 707, as follows:
“ When the defendant relies on no separate, distinct, and independent fact, ■ but confines his defense to the original transaction on which the charge is founded, with its accompanying circumstances, the burden continues throughout with the prosecution. Each item of the charge must be proved in the same manner as if the whole issue rested on it.” (Payne v. Commonwealth, 1 Met. 375.)
When this instruction is tested by these rules of law, applied to the facts as already stated, and considered in connection with other instructions given, we readily see that it most probably misled the jury to the prejudice of the substantial rights of the appellant. The jury were told in the sixth instruction that if they believed the killing was done, not in malice nor in necessary self-defense, but in sudden heat and passion, they must find the accused guilty of manslaughter. These two conflicting instructions told the jury, in effect, that *370 if the killing was cruel and unnecessary, and done with a deadly weapon, the law implied the existence of malice, and that therefore the killing was willful murder; although they might believe that it was done in sudden heat and passion or in self - defense. An unnecessary or a cruel killing is not always willful murder. If from all the facts and circumstances there was an apparent necessity that the accused should take the life of his antagonist in order to preserve himself »from death or great bodily harm, then about to be inflicted, he is justified on the ground of self - defense; and a killing with a deadly weapon will be excusable when done in apparently necessary self-defense, or may be manslaughter when done in sudden heat and passion. This conflict could have been avoided by telling the jury that they might infer malice from the circumstances of the killing, but such an instruction would be objectionable because of the undue prominence that would be given to the fact of killing with a deadly weapon.
When it is considered that, in testing instructions, every deduction which the jury might have been authorized to make from the testimony must be assumed as a fact proved, it will be more readily seen how great is the probability that the instruction complained of confused and misled the jury.
Suppose, for instance, the jury to have determined that Land first assaulted and attempted, without provocation, to shoot and kill appellant, and that, in sudden heat of passion, produced by the unprovoked and deadly .assault, appellant, without malice, and not in self-defense, obtained the gun and killed Land? In that case appellant was*guilty only of manslaughter, and the jury must have so found, but for the instruction that malice was implied, by law, from the fact that the killing was done with a deadly weapon. The question of malice or no malice is thus taken from the jury, and although they have found all the necessary elements to reduce the killing to manslaughter, they must either disregard the *371 third instruction or find the accused guilty of murder. The effect of the two instructions was to destroy each other, and to deprive appellant of the benefit of the law applicable both to manslaughter and to self-defense, and to reduce the jury to the necessity of finding- appellant guilty of willful murder, or to return a verdict of not guilty.
Malice is necessarily a constituent element in the crime of murder, and must be established by evidence to the satisfaction of the jury, as any other fact necessary to make out the offense, and is no more within the province of the court to determine than the fact'of death, or the character of the weapon used to inflict it. The shadowy boundary line between the province of the court and the province of the jury, that existed when the courts were permitted to charge the jury orally, and to comment on the weight of evidence, has been sharply drawn and well defined by the provisions of the Criminal Code, already cited. Each is an absolute sovereign within its own domain, with no disputed territory, and no questionable powers. (Brady v. Commonwealth, 11 Bush, 285.)
Mr. Wharton, in his work on Criminal Law, section 712, 7th edition, says, “The doctrine that malice and intent are presumptions of law to be inferred from the mere act of killing belongs, even if correct, to purely speculative jurisprudence, and can not be applied to any case that can possibly arise before the courts;” and in the second volume of his work on Evidence, book 3, chapter 14, will be found a full discussion of this question.
Mr. Bishop, in his Commentaries on Criminal Law, 6th edition, section 673, says that according to the analogies of the modern law of evidence and the better procedure before juries, the existence of malice is to be deduced by the jury from the facts put in evidence.
Mr. Proffatt, in his treatise on Trial by Jury, section 331,1) says, “Of late the tendency is to hold the prosecution to a| *372 strict proof of malice, and the common-law doctrine of implied malice is disapproved.” (Stokes v. People, 53 N. Y. 164.)
In Commonwealth v. Hawkins, 5 Gray, 446, decided 1855, Chief Justice Shaw delivering the opinion, it is said that when all the circumstances attending the homicide were fully shown by the evidence, as in this case, the burden was on the Commonwealth to prove the whole case, and that the jury must be satisfied, upon all the evidence, beyond a reasonable doubt, of the existence of malice.
According to this construction of the cases of Commonwealth v. York, 9 Metcalf, and of Commonwealth v. "Webster, 5 Cushing, so often cited by the text-writers in support of the proposition that malice is implied by law from the existence of certain facts, they are not authority for any such instruction when all the circumstances attending the killing are known.
In York’s case the fact of killing was established, to a great extent, by circumstantial evidence, and entirely so in the Webster case. The opinion in each of these three cases was delivered by Chief Justice Shaw, and the Hawkins case he expressly distinguishes from the York case. It is also to be observed that in the York and Webster cases the question I decided was simply whether the doctrine of reasonable doubt Icould be applied, in determining by the jury, the existence of malice, or whether, the killing being established to their satisfaction, there was not a prima fade case for the Commonwealth, and the burden of proving the absence of malice, or to prove ' justification, shifted to the accused. We have already seen that under the rule in this state, and which appears now to be very generally adopted, the burden of proof never shifts from the Commonwealth to the accused when the plea is simply “not guilty,” but remains upon the prosecution throughout. So, considering that the Massachusetts cases are authority then for the position that the proof of killing, nothing else ap *373 pearing, makes it incumbent upon the accused to prove the absence of malice, it is clear that they are not authority, even in that state, for the application of that rule where all the circumstances of the killing are known, and are not authority in this state, upon this point in any case, if for no other reason than that they are in conflict with the well-established rule that requires the burden of proof to remain with the prosecution.
Chief Justice Redfield, in State v. McDonnell, 32 Yt. 538, after citing 1 Hawkins’s P. C. 82, chap. 131, sec. 32, to the effect “ that whenever it appears that a man killed another it shall be intended, prima fade, that he did it maliciously, unless he can make out the contrary, by showing that he did it on sudden provocation,” etc., says: “The same general proposition is substantially repeated in all the subsequent treatises and reports where the question has arisen; but it seems to have been done without much examination, and one might be allowed to question its application to the mere act of killing, since, being but a presumption of fact, in the absence of all evidence in regard to the mode of death, the presumption off innocence must be allowed to prevail over that of malice.'
. . . This is undoubtedly one of those points where the jury should be expected to judge for themselves, as it is a subject which they understand as well as the court, since it has reference to matter of fact, rather than of law.”
In Madden v. State, 1 Kansas, 356, it is held that the presumption that the accused intended the natural and probable consequences of his own acts, is not one of law, to be applied by the court, but of fact, to be weighed by the jury. (See also, to the same effect, Coffee v. The State, 3 Yerg. 283; U. S. v. Mingo, 2 Cur. C. C. 1; Maher v. The People, 10 Mich. 212.)
In Greenleaf on Evidence, vol 1, sec. 18, it is said, “ The intent to murder is conclusively inferred from the deliberate use of a deadly weapon.” Commenting on this the court, in Clem I v. State, 31 Indiana, 484, say that it is not supported by the] *374 authorities cited by Mr. Greenleaf, and is at variance with uniform and well-established principles.
In Smith v. The Commonwealth, 1 Duv. 226, opinion by Judge Robertson, the court held this instruction erroneous, to wit, “If homicide be committed by a deadly weapon, in the previous possession of the slayer, the law implies malice in the perpetrator.” The court say of it, “As given without qualification as to how far, or for what purpose, the weapon happened in the perpetrator’s possession, or whether, having it for a lawful purpose, he used it in self-defense, or under sudden and provoked heat of passion, this instruction was certainly wrong and misleading.”
It might well be said that this amounted to holding, inferentially and argumentatively, that the instruction would be good if given with the qualifications indicated. But two things are to be considered in this connection: First, the point that the law implies malice does ■ not appear to have received the attention of the court; the objections pointed out being sufficient to destroy the instruction, the court was content to stop them. Secondly, the improbability of being able to draft an instruction containing all the suggested qualifications and exceptions 'mentioned that might not mislead the jury to the prejudice of the accused. Instructions should be so drafted that they may be taken and applied in their literal sense, for the j urors, unlearned in the law, are not required to be able to do more than to make a literal application to the particular case of the law given them. The constitution of the state guarantees to every citizen the right openly to carry arms, and the possession of them should be presumed to be for a lawful purpose. That presumption existing, the court would then be necessitated to tell the jury what would be an unlawful purpose, and having done that there would still remain the necessity for telling them that, although they might believe the accused had* the deadly weapon in possession for an unlawful *375 purpose, yet that, under certain circumstances, he might use it in self-defense, or if used in the sudden heat of passion the killing would not necessarily be willful murder. “When the instruction should be extended so as to clearly define to the jury all the circumstances which would make the killing justifiable, because done in self-defense, or would reduce it to manslaughter, the chances are that its necessary prolixity would be more apt to mislead and confuse the jury and defeat the ends of justice than if no instruction were given on the point.
Judge Hardin, delivering the opinion of the court in Donnellan v. Commonwealth, 7 Bush, 679, said: “The instruction to the effect that in any case the use of & deadly weapon, not in necessary self-defense, whereby death ensues, will constitute murder, was also erroneous. Such use of a deadly weapon is evidence of malice, and may be an essential ingredient in the proof of murder in many cases; but it does not follow that every homicide committed by the use of a deadly weapon, and not in necessary self-defense, is murder.”
In Shannahan v. Commonwealth, 8 Bush, 471, this court said: “Malice, express or implied, must be proved in order to constitute the crime of murder, and in the absence of this proof no conviction can be had for such an offense; and evidence as to the condition of the accused at the time of the killing, whether drunk or sober, should be permitted to go to the jury, in connection with other facts, in determining the question of malice.”
It appears that the doctrine of implied malice had its origin at a time when the crime of murder was confined to the secret killing of another, and when the rules of evidence as now established were but little known. (4 Bl. Com. 194, 195.) Such appears to have been the class of cases to which the doctrine was first applied in Massachusetts and in several other states; but it appears that some of the American writers on the law of evidence, citing and approving these cases, have, *376 by the use of general terms, extended their application to all homicides. In many of the cases cited in support of the proposition that the law implies malice from deliberate killing with a deadly weapon, it is seen on examination that the jury found by special verdict the facts and circumstances connected with the killing, and the court upon that finding determined whether there was malice. (The King v. Oneby, 2 Ld. Raym. 1485-1494.) But whatever the origin of the rule .may be, we are convinced that it is entirely arbitrary, contrary to the reason and the analogies of the law of criminal procedure, both at common law and under our statutes and Code.
Therefore, as the-instruction complained of tells the jury that the law implies malice from certain acts, it is erroneous. Wherever, in case of charge of homicide, there is evidence before the jury from which they might conclude that the killing was done in necessary self-defense or in the sudden heat of passion, such an instruction may be fatally misleading; and while there may be cases where there is no such evidence, and in which such an instruction could not mislead, it should not be given in any case. If, in the entire absence of such evidence, from which the jury might acquit on the ground of self-defense, or might find a verdict of manslaughter, a similar instruction should be given, this court might not feel justified in reversing the judgment of the lower court for that reason alone; because the instruction was not prejudicial, it is safe to say that it can never serve to enlighten the jury, and ought in every case to be omitted.
As the judgment must be reversed for the reasons indicated, it is proper that we should notice the objection made by counsel for appellant to the statements of Miller and Best as to what Humber said when appellant approached Land the first time. That testimony was purely hearsay, and should have been rejected, as we presume it would- have been if exception had been- properly taken by counsel for appellant. The bill of *377 evidence, however, shows that no such objection was taken, and we must therefore infer that the attention of the court below was not called to it.
Wherefore the judgment is reversed, and cause remanded with direction to grant appellant a new trial, and for other proceedings consistent with this opinion.