CASE 25.—PROSECUTION AGAINST CHARLES EWING FOR
    MURDER.

# Ewing v. Commonwealth

129    237
f133    537

Appeal from Warren Circuit Court.

JOHN M. GALLOWAY, Circuit Judge.

Defendant convicted and appeals—Reversed.

1.  Homicide—Evidence—Admissibility—Intent.—Where a defend-
    ant was apparently friendly when he shot deceased, and
    claimed that the shooting was unintentional, and it appeared
    that deceased, who was a woman, had beaten a woman with
    whom defendant was intimate, it was not error to allow the
    state to show that, when defendant heard of the beating,
    he remarked. "I wish I had seen her," and that, while de-
    fendant and the two women were in a saloon shortly before
    the homicide, he said, with an oath: "I would just as soon
    kill this bitch as not."
2.  Same—Question for Jury.—Whether defendant's shooting of
    deceased was done by malice, held, under the evidence, to
    be a question for the jury.
3.  Same.—At common law it was a question for the court
    whether the killing of another with a deadly weapon was
    done with malice or not.
4.  Same—"Murder."—At common law the reckless killing of
    another with a deadly weapon was murder; malice being
    implied.
5.  Same—Evidence—Presumptions—Malice.—The     common-law
    doctrine that malice is implied from the reckless use of a
    deadly weapon does not obtain in Kentucky, but the existence
    of malice is a question for the jury.
6.  Same—"Voluntary Manslaughter."—The offense which would
    otherwise be murder becomes voluntary manslaughter where
    the jury find that the killing was not done with malice afore-
    thought.
7.  Same—"Voluntary Manslaughter."—A homicide committed by

the wanton, reckless, or grossly careless use of a firearm, without malice aforethought, is voluntary manslaughter, although there was no intent to kill; the recklessness of the act supplying the criminal intent.

8. Same.—If the jury find the homicidal act was done without malice, they may find that the act was voluntary, where it was done so recklessly or carelessly as to show an indifference to the consequences.

9. Same—Evidence—Presumptions—Intent.—He who puts a loaded pistol at the head of another and pulls the trigger, knowing the danger attending the act, cannot be heard to say he intended no harm.

10. Same—Involuntary Manslaughter.—At common law the offense was not involuntary manslaughter where the homicidal act amounted to a felony, or was likely to endanger life, although done without intent to kill.

11. Same—Instructions.—Where the state's evidence shows that defendant suddenly raised his pistol and fired at the head of deceased with whom he was walking quietly, and defendant's evidence shows that he did not intend to shoot, but was playing when he raised his pistol, and that the firing was due to his pulling the trigger harder than he intended, an instruction on murder, voluntary manslaughter, and involuntary manslaughter should be given.

12. Same—Instrument Used—"Deadly Weapon."—A loaded pistol is a deadly weapon.

13. Same—Instructions—Self-Defense.—Where there were witnesses to the homicide and defendant claimed that his shooting of the deceased was unintentional, an instruction on self-defense was improper.

14. Same—"Involuntary Manslaughter."—Where a homicide is commited in the doing of an unlawful act, the offense is involuntary manslaughter, if the facts are not sufficient to constitute murder or voluntary manslaughter.

15. Same.—If one willfully points and discharges a pistol at another, in violation of Ky. Stats. 1903, section 1308, and death ensues, he is at least guilty of involuntary manslaughter.

16. Same.—On a trial for murder, the court should instruct the jury to acquit if there is a reasonable doubt of guilt, and, if there is a reasonable doubt of the degree, to convict defendant of the lower degree, and that voluntary manslaughter is a lower degree than murder, and that involuntary manslaughter is a lower degree than voluntary manslaughter.

Ewing v. Commonwealth.

17. Criminal Law—Instructions—Definition of "Feloniously."—On a trial for murder, the court should instruct that the word "feloniously" means proceeding from an evil heart or purpose.

18. Same—"Malice Aforethought."—On a trial for murder, the court should instruct that the words "malice aforethought" mean a predetermination to do the act of killing without legal excuse, and that it is immaterial how suddenly or recently before the killing such determination formed.

**J. M. SIMMONS and NAT A. PORTER for appellant.**

1. Appellant was tried upon the charge of willful murder in the Warren Circuit Court of Kentucky, at its February term, 1907.

2. The jury found appellant guilty as charged in the indictment and fixed his punishment at confinement in the penitentiary for life.

3. It will be clearly seen by the court that all the evidence on the trial of the case was purely circumstantial and that appellant was convicted on circumstantial evidence alone.

4. There is no proof of malice on the part of appellant shown by the evidence in the case.

5. It is clearly shown by the evidence in the case that the killing was unintentional.

6. The verdict of the jury is palpably against the evidence and is contrary to the law as given by the court on the trial of the case.

7. It seems that the most that could be made out against appellant under the law and evidence in the case, is unintentional killing as provided in section 1151, Kentucky Statutes, 537, 1903 edition.

8. The appellant is a colored boy, and most of the testimony in the case is the testimony of colored witnesses.

9. It is not improper to state that the jury, at the said court at which appellant was tried, seemed to think that every person tried was guilty, proof or no proof, and that they were under the mistaken idea that it was their solemn duty to put an end to all crime by making an example of all persons tried before them.

**N. B. HAYS, Attorney General, and CHAS. H. MORRIS, for the Commonwealth.**

No Authorities Cited.

OPNION OF THE COURT BY JUDGE HOBSON—Reversing.

Charles Ewing was indicted in the Warren circuit court for the murder of Carrie Shields. He was found guilty as charged, and his punishment fixed at imprisonment in the penitentiary for life, and from this judgment he appeals.

Carrie Shields was 16 years old. According to the proof for the Commonwealth a girl named Girtie Ray was intimate with Charles Ewing. The killing occurred on Monday. On the previous Monday Carrie Shields had a fight with Girtie Ray; Charles Ewing being away at the time. On the following Saturday, when he returned, Girtie Ray told Charles Ewing that Carrie Shields had jumped upon her, and beat her up while she was drunk, and he said, "I wish I had seen her," or, "I will see her." The witness did not remember which. He bought a pistol, and on the following Monday morning the two women, Charles Ewing, and a man named Sam Chambers, all the parties being negroes, were at a saloon near the landing below Bowling Green. They drank in the saloon, and took whisky away with them. While they were there Ewing was heard to say, with an oath: "I would just as soon kill this bitch as not." The saloon keeper told him not to raise any racket there, and he said. "All right." They got into a boat and went across the river, and then to a man's house. As they were returning from the man's house to the river, when the party were walking quietly along the turnpike and apparently in a good humor, Ewing suddenly raised his pistol, and, without stopping, fired it, striking Carrie Shields, with whom he was walking, in the head, and instantly killing her. Sam Chambers and

Girtie Ray were walking behind them, and witnessed the shooting. On the other hand, the proof for the defendant is that Sam Chambers had given his pistol to Carrie Shields, and, as they were walking along, she held it in his face, saying, "Don't you believe I'll shoot you?" He said, "No." She repeated this three or four times, and he each time said, "No." They did not stop walking. He pulled out his pistol, and threw it in her face, and said, as he testifies: " 'No; I don't believe you will shoot me'; and I bore too hard on my trigger, and it went off and killed her. She had her pistol in my face, and I had mine in hers. We both were walking along with our pistols in each others faces, and my pistol went off. Q. Did you pull it off purposely? A. No, sir. Q. Did you think she was meaning to shoot you? A. No, sir. Q. What was her manner? A. She was laughing, and I thought she was playing. Q. And when you pulled your pistol what was your intention? A. I was playing myself when I pulled mine. Q. Did you mean to shoot her? A. No, sir." The defendant's testimony is in some measure corroborated by other witnesses. The court did not err in allowing the proof as to what the defendant had said when he heard that Carrie Shields had beaten up Gertie Ray when she was drunk, or in allowing proof of what he said at the saloon that morning. Although the parties were then apparently friendly, the jury were to judge whether the friendliness was apparent or real; and the proof, taken in connection with his buying the pistol and the other circumstances in the case, were sufficient to go to the jury on the question of malice. The court instructed the jury as to murder, involuntary manslaughter, and shooting by misadventure. He also gave an instruction on self-defense, but he gave

no instruction on voluntary manslaughter; his view of the case being that the shooting was either murder or involuntary manslaughter.

There is no doubt that at common law it would have been a question for the court, and not the jury, whether this shooting was done with malice or not, and that at common law it would have been held murder. In 1727 the Chief Justice delivered the unanimous opinion of all the judges (in the case of Rex v. Oneby, 2 Stra. 766), as follows: "The judges are to determine what is malice or what is a reasonable time to cool; and they must do so upon the circumstances of the case. The jury are judges only of the fact, and we must determine whether it be deliberate or not. Hence it is that in summing up the evidence the judges direct the jury if you believe such a fact, it is so, if not, it is otherwise, and they find either a general or a special verdict upon it. There is no instance where the jury ever find that the act was done by malice, or that the party had or had not time to cool; but that must be left to the judges upon the circumstances of the case." In 2 Bishop on Criminal Law, section 676, it is said: "An actual intent to take life is not a necessary ingredient in murder, any more than it is in manslaughter." Again, in section 680, it is said: "Ordinarily when one without legal excuse so uses a deadly weapon that the death of a human being results therefrom, the law either conclusively or as a violent presumption of fact infers malice aforethought, and adjudges the act to be murder." Under these authorities, it is manifest that at common law the killing in this case would be held to be murder upon the ground that malice was implied from the use of a deadly weapon under the circumstances shown. But the doctrine of implied malice does not

obtain in Kentucky.   Farris v. Commonwealth, 14 Bush, 362; Buckner v. Commonwealth, 14 Bush, 601; Trimble v. Commonwealth, 78 Ky. 176.   Yet it does not follow that, because the doctrine of implied malice does not obtain in Kentucky, the shooting here, which would be murder at common law, is involuntary manslaughter.   When we reject the doctrine of implied malice, the existence of malice is a question for the jury, and the offense which would otherwise be murder becomes voluntary manslaughter, where under the evidence the jury find as a fact that the killing was not done with malice aforethought.   Accordingly it has been held in Kentucky in a long line of cases that, where one kills another by the wanton, reckless, or grossly careless use of firearms, the offense, if without malice aforethought, is voluntary manslaughter, although he had no intention to kill.   Sparks v. Commonwealth, 3 Bush, 111, 96 Am. Dec. 196; Chrystal v. Commonwealth, 9 Bush, 669; York v. Commonwealth, 82 Ky. 360, 6 Ky. Law Rep. 344; Smith v. Commonwealth, 93 Ky. 318, 20 S. W. 229, 14 Ky. Law Rep. 260; Montgomery v. Commonwealth, 81 S. W. 264, 26 Ky. Law Rep. 356; Brown v. Commonwealth, 92 S. W. 542, 28 Ky. Law Rep. 1335.   These opinions rest on the common-law principle that a man must be held to intend the necessary consequence of his act.   In 1 Bishop on Criminal Law, section 313, it is said: ''There is little distinction in degree between the will to do a wrongful thing and an indifference whether it is done or not.   Therefore carelessness is criminal, and within limits supplies the place of affirmative criminal intent.''   When we do not apply the doctrine of implied malice, and submit the question of malice to the jury, it must follow that, if the jury find the act was done without previous malice, they

may find that the act was voluntary where it was done so recklessly or carelessly as to show an indifference to consequences. To hold otherwise would be to ignore the rule that he who acts recklessly is in law presumed to intend the consequences of his act. He who puts a loaded pistol at the head of another, and pulls the trigger, knowing the danger attending the act, cannot be heard to say he intended no harm. 1 Greenleaf on Evidence, section 18. At common law the offense was not involuntary manslaughter where the act amounted to a felony or was likely to endanger life, although done without intention to kill. Roberson's Crim. Law, section 198, and cases cited. As the reckless killing of another with a deadly weapon was not involuntary manslaughter at common law, when we hold that such a killing is not necessarily murder, the offense which was not involuntary manslaughter at common law does not become involuntary manslaughter; but, when the jury finds that the homicide is not with malice aforethought; it is a voluntary killing without malice, the recklessness of the act supplying the intent to harm the person shot. This case is on all fours with Messer v. Commonwealth, 76 S. W. 331, 25 Ky. Law Rep. 700; Id., 85 S. W. 722, 27 Ky. Law Rep. 527; Id., 90 S. W. 955, 28 Ky. Law Rep. 921. On the first appeal of the case the judgment was reversed because the court failed to give an instruction on involuntary manslaughter. On the second appeal it was reversed because the court by oversight omitted an instruction on accidental killing. On the third appeal the judgment was affirmed. But, on each trial, the court gave an instruction on voluntary manslaughter.

On another trial, the court will by its instructions submit to the jury these propositions: (1) If the de-

fendaant wilfully, feloniously, and with malice afore-
thought, shot and killed Carrie Shields, he was guilty
of murder.  (2) If he shot and killed her, without
malice aforethought, by the reckless or grossly care-
less handling or shooting of the pistol, when he knew
the pistol was dangerous to life if used in the way
he used it, they should find him guilty of voluntary
manslaughter, although he did not intend to shoot
her.  (3) If he was not reckless or grossly careless
in using the pistol, but intentionally pointed it at her,
although believing it would not go off, not intending
to shoot her and not having reason to apprehend that
it would go off, he was guilty of involuntary man-
slaughter.  (4) If the shot that killed her was acci-
dental and unintentional on the part of the defendant,
and not wilful, and with malice aforethought, as de-
fined in No. 1, or the result of his recklessness and
carelessness, as defined in No. 2, or of his intention-
ally pointing the pistol at her, as defined in No. 3,
he should be acquitted.

There was proof introduced by the defendant to the
effect that the defendant paid 50 cents for the pistol,
that it was old, and that he had repeatedly snapped
it, and thought it would not go off, and it would ap-
pear from his evidence that the firing of the pistol
was due to his pulling the trigger harder than he in-
tended.  There was nothing in the case upon which
to base an instruction on self-defense; and this on
another trial will be omitted  There were witnesses
to the homicide, and therefore the case does not fall
within the rule that an instruction on self-defense
should always be given where the proof is exclusively
circumstantial.  Section 1308, Ky. St. 1903, is as fol-
lows: "If any person shall draw a deadly weapon
upon another, or shall point any deadly weapon at

another, or shall hold or flourish or use in a threatening or boisterous manner, or shall, on a public highway, or at any school assembly, place of public worship or business, or in going to or from any place of public worship, fire or discharge at random any deadly weapon, he shall be deemed guilty of a misdemeanor, whether said weapon be loaded or unloaded, and, upon conviction, shall be fined not less than fifty nor more than one hundred dollars, or imprisoned not less than ten or more than fifty days, or both." The pistol was a deadly weapon, for the woman was killed. It was unlawful for defendant to point it at her whether it was loaded or unloaded. Where a homicide is committed in the doing of an unlawful act, the offense is involuntary manslaughter, if the facts are not sufficient to constitute murder or voluntary manslaughter. Roberson's Crim. Law, section 198. If therefore, the defendant wilfully pointed the pistol at the woman, and thus killed her ,he is at least guilty of involuntary manslaughter. The court will also give this instruction: "If there is a reasonable doubt of the defendant being proven guilty, he should be acquitted. If there is a reasonable doubt of the degree of the offense which the defendant has committed, he should only be convicted of the lower degree. Voluntary manslaughter is a lower degree of the offense than murder; and involuntary manslaughter is a lower degree than voluntary manslaughter." Instructions 1 and 7 given by the court are correct. In lieu of instruction 9 the court will instruct the jury that the word "feloniously" means proceeding from an evil heart or purpose, and that the words "malice aforethought" mean a predetermination to do the act of killing without legal excuse; and it is immaterial how suddenly or recently before

the killing such determination was formed. The instructions indicated and above referred to, constitute the whole law of the case.

Judgment reversed and cause remanded for a new trial.

BARKER, J., dissents.