## Pash v. Commonwealth.

(Decided January 24, 1912.)

### Appeal from Nelson Circuit Court.

1. Homicide—Sufficiency of Evidence—Verdict for Voluntary Manslaughter.—As the evidence conduced to show that appellant shot and killed deceased in sudden heat and passion, or that the killing was the result of his reckless or grossly negligent use of a pistol, it cannot be said that the verdict finding him guilty of voluntary manslaughter was unauthorized.

2. Instructions.—The instructions allowed the jury to determine whether the homicide was murder, voluntary or involuntary manslaughter, or the result of accident. While there was perhaps not sufficient evidence to justify a verdict for murder, the instruction as to murder was not prejudicial to appellant, as the verdict found him guilty of the lesser crime of voluntary manslaughter.

3. Drunkenness No Excuse for Homicide.—Drunkenness will not excuse a homicide, but may be considered in connection with all other evidence in the case, in determining whether the killing was malicious or otherwise.

4. Competency of Confession.—The fact that there was some evidence tending to show that appellant was drunk when he made a confession of his guilt, following the killing, was not ground for excluding proof of the confession; it being the province of the jury to determine whether appellant, at the time of making the confession, was sufficiently at himself to understand the import of his statement.

NAT T. HALSTEAD for appellant.

JAMES GARNETT, Attorney General for appellee.

OPINION OF THE COURT BY JUDGE SETTLE—Affirming.

Appellant was tried and convicted of the crime of voluntary manslaughter under an indictment charging him with the murder of his brother, Eugene, alias Ben Pash. The judgment entered upon the verdict fixed his

punishment at confinement in the penitentiary not less than two, nor more than twenty-one years.

Appellant sought a new trial in the court below and asks of this court a reversal of the judgment of conviction on the following grounds: 1st. That the verdict was not authorized by and was contrary to the evidence, for which reasons, it is claimed, the peremptory instruction directing his acquittal, for which appellant asked at the conclusion of the evidence, should have been given by the court. 2d. That the court erred in admitting, over appellant's objection, incompetent evidence on the trial. 3d. That the court erred in giving the jury instructions 2, 3, 4 and 7.

In order to intelligently pass upon appellant's first contention, consideration of the salient facts of the homicide, furnished by the bill of evidence, will be necessary.

On the night of the 18th of March, 1911, appellant and deceased went from their mother's in Bardstown to a dance at the home of Jim McAtee, who lived in a negro settlement, known as East Bardstown, three miles distant. They were well provided with whisky, each carrying a bottle. Appellant and deceased were each armed with a pistol, and both were under the influence of whisky. They arrived at McAtee's between one and two o'clock a. m. After remaining there about an hour they left for Bardstown accompanied by Ben Allen and Russell May. On the way they took one or two drinks of whisky, and upon reaching the house of Henry Duncan, Jr., also a colored man, they awakened him, and Ben Allen and deceased sang, following which Duncan, at the request of the parties gave them what some of the parties called white whisky, but which Duncan testified was water. The killing of deceased, which then took place, can better be told in the language of Duncan, who testified as follows:

"I was standing in the door and I realized these two boys had pistols in their hands; Eugene and John Pash. They seemed to be playing with them; Allen, he was standing there. He says: 'Don't do that, boys, might be an accident,' and he stepped in between them and kind of taken the pistol away from Eugene. About that time the fire was made that killed him."

The pistol shot which entered deceased's body passed through the heart and was instantly fatal.

The testimony of Allan and May does not differ materially from that of Duncan.

It is insisted for appellant that the evidence failed to show who fired the shot that killed deceased, but this contention is without force in view of the facts: 1st. That appellant and deceased were the only members of the party armed with pistols. 2d. That the latter's pistol had been taken from him by Allen before he was shot. 3d. That appellant's pistol was a 22, and deceased's pistol was of a different caliber. 4th. That the ball which killed deceased was fired from a 22 pistol.

It is also claimed by his counsel that appellant was drunk when he shot deceased. While the testimony of the three witnesses named tended to prove that such was his condition, it further showed that deceased, Allen and May, were also drunk, though none of the party was so drunk as to be unable to walk, for appellant was sufficiently at himself to hurriedly leave Duncan's immediately after the shooting and was later seen by the elder Duncan on the side of the road, a square or more from the place of the homicide, asleep. According to the evidence, the homicide occurred on Sunday between three and four o'clock a. m.; something like seven hours later appellant was arrested by Philips, a peace officer, at his mother's and that officer and Baker Smith, who assisted in the arrest, testified that appellant was then "drinking," that is, under the influence of intoxicants or drunk, but was not staggering.

The evidence furnished by the testimony of Allen, May and Duncan, the first introduced by the Commonwealth and the last two by appellant, can hardly be said to show a motive for the killing of deceased by appellant, as it was to the effect that no angry words passed between them, but that they "laughed and played" with their pistols, between McAtee's and Duncan's as they sat on a log by the way, and that after arriving at Duncan's they again "laughed and played" with their pistols, and were playing with them when deceased was killed. It does not appear from the testimony of the witnesses mentioned in what way appellant and deceased were playing with their pistols; whether by pointing them at each other, flourishing them in their hands, or firing them in the air. It is apparent from their testimony, however, that the playing with the pistols, both at the log and at Duncan's followed attempts on the part of deceased to keep appellant quiet while others in the party sang, and that at Duncan's the playing with the pistols was of such a peculiar nature as to alarm Allen

and cause him to call to appellant and deceased to stop and then get between them and take from the deceased his pistol. We think the testimony of Allen, Duncan and May, notwithstanding its apparent suppression of some of the facts of the killing, furnished grounds for belief on the part of the jury that appellant's handling of his pistol, and the killing of deceased was so grossly careless as to authorize his conviction of voluntary manslaughter.

We are of opinion that the purpose for which appellant drew his pistol, the manner of its use by him, and the motive with which he shot deceased, were explained by the confession he made to Philipps and Smith following his arrest; in which he in substance, said, he tried to shoot deceased on the way to Duncan's, but somebody behind him grabbed his gun; that he snapped his gun at deceased and if it had not snapped he would have killed him; that he didn't know whether the gun went off at Duncan's, or not, but if deceased was shot with anything except a 22, he didn't do it; that deceased threatened to kill him time and again, but that he (appellant) was the oldest dog in the crowd, thought he ought to have his way, and didn't propose to be ruled by them. It is argued that the confession ought not to have been accepted as evidence because appellant was drunk when it was made, we have already commented on what the arresting officers said of his condition at the time of the arrest. This testimony together with the confession was properly considered by the jury. It was for them to determine what part, if any, of it was true, and it is not claimed that it was improperly obtained. On the contrary it was entirely voluntary and in large measure explained what the other witnesses of the killing ignored or suppressed.

It is apparent from the foregoing facts that the peremptory instruction asked by appellant was properly refused. The killing of a human being is too serious a matter to be excused on the ground that the slayer was drunk at the time of committing the act. Drunkenness will not excuse or condone a homicide, but may be considered by the jury, in connection with all other evidence in the case, in determining whether the killing was done under such circumstances as constituted the act, murder, voluntary or involuntary manslaughter, or merely an accidental killing. There may be much doubt whether the evidence was sufficient to convict appellant of murder,

but we can not say that it did not furnish grounds for the verdict of voluntary manslaughter returned by the jury. Instruction 2, of which appellant complains, is not objected to on the ground that it does not properly define the crime of murder, but upon the ground that the evidence did not authorize such an instruction. We do not accept this view of the case, but if we were to do so, would nevertheless hold that the instruction was not prejudicial to appellant, as the jury did not find him guilty of murder.

Instruction 3, also objected to. by appellant, properly defined voluntary manslaughter, and advised the jury in what state of case they would be authorized to find him guilty of that offense.

Instruction 4, likewise objected to, properly told the jury what would constitute voluntary manslaughter, and submitted to them the question whether appellant was guilty of that offense.

Number 7, also objected to, allowed the jury to determine whether the killing was merely accidental, and in the event they so found, authorized appellant's acquittal.

The instructions mentioned are substantially in the form repeatedly approved by this court. The most recent case manifesting such approval being that of McGeorge v. Commonwealth, 145 Ky., 540, in which the appellant was convicted of voluntary manslaughter for killing his wife. In the opinion we said:

"We are further of opinion that appellant's complaint of the instructions is not well founded. They instructed the jury in substantially correct language, upon murder, voluntary, involuntary manslaughter and accidental killing, as well as on the subjects of reasonable doubt and presumption of innocence. These aspects of the case should all have been submitted to the jury. If appellant wilfully, feloniously and with malice aforethought shot and killed his wife, he was guilty of murder. If he shot and killed her without malice aforethought but in sudden heat and passion, or by the reckless or grossly careless handling or discharge of the pistol, when he knew it was dangerous to life, if used in the way he used it, he was guilty of voluntary manslaughter. If he was reckless or grossly careless in handling the pistol, but intentionally pointed it at her, and in thus doing permitted it to be discharged, although believing it would

not go off, not intending to shoot her and not having reason to apprehend that it would go off, he was guilty of involuntary manslaughter. On the other hand if the shot that killed her was accidental and unintentional on the part of appellant, and not wilful and with malice aforethought as defined in the instruction as to murder, or the result of sudden heat and passion, or recklessness and carelessness as defined in the instruction on voluntary manslaughter, or of his intentionally pointing the pistol at her as defined in the instruction on involuntary manslaughter, appellant should have been acquitted. '' Ewing v. Commonwealth, 129 Ky., 237; Brown v. Commonwealth, 122 Ky., 626; Hunn v. Commonwealth, 143 Ky., 143.

The failure of the court to exclude the rebutting testimony of Allen introduced to contradict Duncan, appellant's witness, was not prejudicial error. Allen in order to contradict Duncan was asked if he had, in taking deceased's pistol from him, hollered out to him and appellant ''not to play with those guns, there might be an accident,'' to which he answered ''No.'' The question assumes that Duncan testified Allen had hollered out as indicated. As a matter of fact he had not so testified, but did state Allen said: ''Don't do that, boys, might be an accident, and stepped between them and got Eugene's pistol.''

The foregoing question to Allen and his answer should not have been allowed. It did not contradict Duncan, for it did not matter whether Allen hollered to appellant and deceased to stop handling their pistols as they were doing, or merely requested them in an ordinary tone of voice to do so. It was admitted by Allen that he requested them to quit what they were doing and that he got between them and took from deceased his pistol. The evidence in question was, therefore, as to an immaterial matter and its admission harmless error.

It is insisted for appellant that the trial court erred in admitting the testimony of John Edelen for the purpose of contradicting appellant's witness, May. Edelen's testimony was that on Sunday after the killing, May told him at his livery stable, that appellant and deceased quarreled from the time they left the dance until they got to Duncan's, the place of the killing. The objection to this testimony is that the question put to Edelen was not precisely the same in form that had been asked May in laying the foundation for contradicting him.

A comparison of the question asked May with the one asked Edelen, will show little difference in language and practically none in substance or meaning. Both fixed the livery stable as the place, and Sunday following the homicide as the time of the conversation, and the answer made by Edelen was the same he would have made to the precise question put to May. In our opinion there was no error in the admission of Edelen's testimony, and the jury were advised that it could only be considered by them for the purpose of contradicting May. There were perhaps one or more further objections to other parts of the evidence, but they are not deemed of sufficient importance to be considered.

In our opinion appellant received a fair trial and the judgment is, therefore, affirmed.

Whole court sitting.