STATE of Missouri, Respondent,

v.

Donnie Ray PHROPER, Appellant.

No. WD 31557.

Missouri Court of Appeals,
Western District.

May 12, 1981.

Michael Paul Harris, P. C., and Ronald M. Sokol, St. Joseph, for appellant.

John Ashcroft, Atty. Gen., Jefferson City, Catheryn B. Starke, Asst. Atty. Gen., Kansas City, for respondent.

Before KENNEDY, P. J., and SHANGLER and SOMERVILLE, JJ.

SOMERVILLE, Judge.

Defendant was charged with assault in the first degree committed by means of a dangerous instrument, a class A felony (Section 565.050.1(1) and .2, RSMo 1978).[1] He was found guilty by a jury, however, of assault in the second degree, a class D felony (Section 565.060.1(3)(a)(b), RSMo 1978), and his sentence was assessed at five years confinement in the Department of Corrections. Judgment and sentence were entered and pronounced accordingly.

Defendant presents five points on appeal: (1) the evidence, when measured by defendant's defense theories of "imperfect self-defense" and "over-provocation", was insufficient as a matter of law to support submission of either assault in the first degree[2] or

1. All statutes herein referred to are part of "The Criminal Code" effective January 1, 1979.

2. The sufficiency of the evidence to support submission of assault in the first degree is a

moot question as defendant was found guilty of assault in the second degree. Even though moot, it laps over into any meaningful discussion of the sufficiency of the evidence to sup-

assault in the second degree; (2) the term "recklessly" contained in Instruction No. 10 (MAI–CR 2d 19.06.1, "Assault in the Third Degree—Class A Misdemeanor") was inadequately defined in Instruction No. 5 (MAI–CR 2d 33.00, "Definitions—General Form) as it failed to reflect defendant's defense theories of "imperfect self-defense" and "over-provocation"; (3) Instruction No. 6 (MAI–CR 2d 2.41.1, "Justifiable Use of Force in Self-Defense") erroneously omitted an optional paragraph in view of defendant's defense theories of "imperfect self-defense" and "over-provocation" and the term "deadly force" used therein was not defined in Instruction No. 5; (4) the trial court erred in not considering defendant's request for probation; and (5) the trial court erred in not obtaining a presentence investigation report before pronouncing sentence. Should defendant prevail on either of the first three points, reversal and remand for a new trial would be in order. On the other hand, should he prevail solely on point four or five, affirmance and remand for the limited purpose of resentencing would be the most he could hope for.

A detailed resume of the evidence, that offered by the defendant as well as that offered by the state, is unavoidable as three of the five points question various instructions in an evidentiary context. A resume of the evidence adduced from various witnesses presented by the state will be undertaken first.

On the night of May 8, 1979, at approximately 10:45 P.M. Gary L. Church, Jr., (Church) was in his second floor apartment on King Street, in St. Joseph, Missouri. Access to Church's apartment was by means of a door located on the street level. Church responded to a knock on the door and stepped out onto the sidewalk. Upon doing so he encountered a group of four or five males several years junior to him in age. Church was several years out of high school and weighed approximately two hundred and five pounds. The group had a surly attitude and, for some unexplained reason, had come to assault Church. The door which Church stepped out of was equipped with an automatic self-locking device which prevented him from getting back inside.

One of the young men jumped on Church's back and several of the others hit him with their fists and made a concerted effort to force him off of his feet and down onto the sidewalk. Church successfully warded off his assailants and they temporarily retreated to a position five or ten feet away. They then renewed the assault but were still unable to bring Church down. Upon being thwarted a second time, Church's assailants once again temporarily retreated to a position five or ten feet away. Church was acquainted with the defendant. However, events were happening so fast that he was unable to identify defendant as one of the participants in the two attacks just mentioned.

After the second attack, Church angrily exclaimed, "Well, there's one of me and five of you, I'll take you on one at a time, come on." The group then started towards Church at which time he recognized defendant as the person in the forefront. Church grabbed defendant by the shoulders, shoved him upon the hood of a car parked along the curb, and struck him several times on the face with his fists.

Church, concerned about what the remaining members of the group behind him might be up to, released defendant and momentarily turned away from him. As he turned back towards defendant he saw that he was bleeding. He then noticed, for the first time, that defendant had a knife in his hand. Church exclaimed, "You cut me with that knife", to which defendant responded, "Don't f_____ with me". Defendant then left the scene and Church made his separate way across the street to a fast food restaurant where he received emergency medical treatment. Shortly thereafter Church was taken by ambulance to a local hospital

port submission of assault in the second degree in view of the form in which the latter was

submitted and the unusual tenor of defendant's first point.

where he underwent surgery for three stab wounds, one in the left buttock area, one in the left side and one in the left shoulder. He was hospitalized for six days, three of which were spent in the intensive care unit because of internal bleeding.

A resume of the evidence presented by defendant, principally his own testimony, is next in order. According to defendant, he and a companion were walking down the street in the vicinity of the victim's apartment on the night in question. As they did so, they casually fell in behind a group that "was going down to fight somebody". Defendant was acquainted with several members of the group and he and his companion followed them. The group, including defendant, stopped when they arrived at Church's apartment, although defendant stayed in the background. When Church stepped out of the apartment door onto the street several persons in the group which defendant had joined jumped on Church and started hitting him with their fists. At first, defendant just stood and watched the fight. A short time later defendant stepped in and grabbed one of the fellows who had jumped on the victim's back and pulled him off. When he did so, the rest of the group "split away" from the victim. Defendant then put his left hand in his rear pocket and started to turn around. Just as he did so the victim grabbed defendant's throat with his left hand and shoved him up against the hood of the car that was parked along the curb. Defendant denied that he made any "movement towards" the victim.

After shoving defendant up against the hood of the car, the victim choked defendant with his left hand and hit him "four times" about the face with his right fist. While this was going on, defendant's left arm was immobilized, and he was unable to extricate his left hand from his rear pocket. Defendant was being choked and hit with such force that he was unable to breathe and "was bleeding". He became "scared", reached into his right pocket with his right

hand, removed a pocketknife which had a two and one-half inch folding blade, opened the blade of the pocketknife with his right hand, and "cut" in the direction of the victim's left arm in an attempt to free himself. The pocketknife, as noted, had a folding blade, not a switchblade. When defendant got free he put his knife back in his pocket and walked home. Defendant was five feet six inches in height and weighed approximately 127 pounds on the night in question. According to defendant, the blows which the victim inflicted upon him caused his nose to swell and bleed, broke one of his teeth, and shoved a partial plate he was wearing "up into the roof of ... [his] gums."[3] Defendant admitted that he had previously been convicted of "common assault" and "stealing over fifty dollars".

◼ This case has been plagued with confusion from the very outset because defendant has summarily assumed that the doctrine of "imperfect self-defense" is applicable in assault cases. Prior to enactment of The Criminal Code, where an aggressor entered into an encounter *without* a felonious intent, during the course of which he was assaulted with such violence that he was obliged to kill to save his own life, he could defend on the basis of "imperfect self-defense" which reduced the grade of the offense to manslaughter but did not justify the homicide. *State v. Fuller*, 302 S.W.2d 906 (Mo.1957); *State v. Mayberry*, 360 Mo. 35, 226 S.W.2d 725 (1950); *State v. Cable*, 117 Mo. 380, 22 S.W. 953 (1893); and *State v. Parker*, 106 Mo. 217, 17 S.W. 180 (1891). The distinction between self-defense justifying a homicide and imperfect self-defense reducing the grade of the offense is spelled out in *State v. Partlow*, 90 Mo. 608, 4 S.W. 14 (1887), and *State v. Parker, supra*. Unfortunately, defendant conveniently ignores the fact that it was made clear long ago in *State v. Melton*, 102 Mo. 683, 15 S.W. 139 (1891), that the doctrine of "imperfect self-defense" is inappli-

---

**3.** The injuries which defendant claimed to have received were disputed by several rebuttal witnesses.

cable in assault cases. Another area of confusion plaguing this case is the meaning, source and effect attributable to what defendant has denominated "over-provocation". Defendant argues, with respect thereto, that even though he was the aggressor, the choking and blows administered upon him by the victim during the course of the ensuing affray were so provocative that his stabbing of the victim was a reasonable response which reduced the offense, as a matter of law, to something less than either assault in the first degree or assault in the second degree. Viewed in the context just mentioned, defendant's self proclaimed doctrine of "over-provocation", notwithstanding its appellation, is one and the same as the doctrine of "imperfect self-defense", a doctrine held inapplicable in assault cases. *State v. Melton, supra.* Defendant cites *State v. Bartlett*, 170 Mo. 658, 71 S.W. 148 (1902), in support of his improvidently designated doctrine of "over-provocation". A careful reading of the case discloses that the undisputed facts presented a classic example of conventional self-defense as a matter of law in a homicide case. "Over-provocation", in the sense advanced by defendant as a separate, independent exculpatory doctrine, can neither be read into nor from *State v. Bartlett, supra.* A common feature of the doctrine of "imperfect self-defense" and defendant's improvidently designated doctrine of "over-provocation" is

that both rest on the assumption that defendant was the initial aggressor. For this reason, they are inconsistent with defendant's highly visible defense theory throughout the trial that he was not the aggressor and was acting in self-defense when he stabbed the victim.

This court concludes that defendant has mistakenly confused what he variously refers to as "imperfect self-defense" and "over-provocation" with Section 565.060.-1(3)(b), RSMo 1978:

"1. A person commits the crime of assault in the second degree if: . . .

(3) He . . . causes serious physical injury under circumstances that would constitute assault in the first degree under section 565.050, but . . .

(b) At the time of the act, he believes the circumstances to be such that, if they existed, would justify killing or inflicting serious physical injury under the provisions of chapter 563 [4] of this code, but his belief is unreasonable."

The two, at first blush, appear strikingly similar. Any similarity, however, stops with the common purpose of each to reduce the seriousness of an offense due to certain extenuating circumstances. The conceptual approach of each for doing so is subtly dissimilar. "Imperfect self-defense" reduced a homicide in grade for purposes of culpability while Section 565.060.1(3)(b), *su-*

4. Section 563.031, RSMo 1978:

"563.031. *Use of force in defense of persons*
1. A person may, subject to the provisions of subsection 2, use physical force upon another person when and to the extent he reasonably believes such to be necessary to defend himself or a third person from what he reasonably believes to be the use or imminent use of unlawful force by such other person, unless:

(1) The actor was the initial aggressor; except that in such case his use of force is nevertheless justifiable provided

(a) He has withdrawn from the encounter and effectively communicated such withdrawal to such other person but the latter persists in continuing the incident by the use or threatened use of unlawful force; or

(b) He is a law enforcement officer and as such is an aggressor pursuant to section 563.-046; or

(c) The aggressor is justified under some other provision of this chapter or other provision of law;

(2) Under the circumstances as the actor reasonably believes them to be, the person whom he seeks to protect would not be justified in using such protective force.

2. A person may not use deadly force upon another person under the circumstances specified in subsection 1 unless he reasonably believes that such deadly force is necessary to protect himself or another against death, serious physical injury, rape, sodomy or kidnapping.

3. The justification afforded by this section extends to the use of physical restraint as protective force provided that the actor takes all reasonable measures to terminate the restraint as soon as it is reasonable to do so.

4. The defendant shall have the burden of injecting the issue of justification under this section."

*pra,* defines a separate offense different in degree from that which would otherwise constitute assault in the first degree. "Imperfect self-defense" benefited even an aggressor, so long as he entered an encounter without a felonious intent, while application of Section 565.060.1(3)(b), *supra,* is tied to the provisions of Chapter 563 (Defense of Justification) of The Criminal Code. It is also significant that neither Section 565.060, *supra,* nor Section 565.070 RSMo 1978 (Assault in the third degree), contains any provision which purports to define a separate offense different in degree from that which would otherwise constitute assault in the second degree.

■■ As defendant's improvident use of the terms "imperfect self-defense" and "over-provocation" has served to confuse rather than assist resolution of the apical issue sought to be tendered, this court will look at the evidence from a conventional point of view—was it sufficient to support the various elements of assault in the first degree and assault in the second degree? The information charged defendant with committing the crime of assault in the first degree by "knowingly" causing "serious physical injury" to the victim by means of a "dangerous instrument". Section 565.050.-1(1) and .2, RSMo 1978, *supra.* By force of statute, the elements of the charged offense are (1) knowingly (2) causing serious physical injury to another person (3) by means of a dangerous instrument. When the evidence and the reasonable inferences therefrom are viewed in the light most favorable to the state, *State v. Hicks,* 438 S.W.2d 215 (Mo.1969), the existence of substantial evidence to support each of the enumerated elements is beyond question. However, the trial court recognized, and properly so, that the evidence presented by defendant, if believed by the jury, injected both self-defense and facts bringing it within the purview of Section 565.060.1(3)(b), *supra.* In view of this evidentiary posture, the trial court, insofar as here pertinent, gave the following instructions of its own volition: Instruction No. 6, self-defense, an adaptation of MAI—CR 2d 2.41.1 (Justifiable Use of Force in Self-defense); Instruction No. 8,

a verdict director submitting assault in the first degree, same being a proper adaptation of MAI—CR 2d 19.02 (Assault in the First Degree) in conformity with appropriate "Notes on Use" appended thereto; and Instruction No. 9, a verdict director submitting assault in the second degree, same being a proper adaptation of MAI—CR 2d 19.04.1 (Assault in the Second Degree—Mitigated from Assault in the First Degree), in conformity with appropriate "Notes on Use" appended thereto. In addition, at the request of defendant, the trial court gave Instruction No. 10, MAI—CR 2d 19.01.1 (Assault in the Third Degree—Class A Misdemeanor). This panoply of instructions gave defendant every benefit he was entitled to receive under the evidence and applicable law. Conflicts in the evidence and its susceptibility to different inferences being reasonably drawn therefrom forcibly demonstrate that matters which defendant seeks by his first point to have resolved as matters of law, whether under a theory of conventional self-defense, misconceived theories of "imperfect self-defense" and "over-provocation" or the applicability or non-applicability of Section 565.060.1(3)(b), *supra,* constituted questions of fact for the jury. The record in this case is replete with conflicting evidence and different inferences susceptible of being reasonably drawn therefrom. For instance, the evidence stands in stark conflict as to who was the aggressor. Moreover, defendant's testimony that he removed his folding blade pocketknife from his pocket and opened it with one hand while the victim was choking and beating him bordered on the incredible and lent itself to different inferences being reasonably drawn as to when defendant drew his pocketknife in an open blade position. From a realistic point of view, defendant appears to contend that he was entitled to acquittal on the ground that the evidence established, as a matter of law, that he was acting in self-defense. As a general proposition, whether an accused acted in self-defense is ordinarily a question of fact for the jury where the evidence is conflicting or of such a character that different inferences

might reasonably be drawn therefrom. *State v. Hammonds*, 459 S.W.2d 365, 368 (Mo.1970); *State v. Cook*, 428 S.W.2d 728, 731 (Mo.1968); and *State v. Jackson*, 522 S.W.2d 317 (Mo.App.1975). This principle is uniquely appropriate for resolving the disparate and conflicting evidence present in this case.

■ Defendant's second point, that the term "recklessly" contained in Instruction No. 10 (MAI—CR 2d 19.06.1, "Assault in the Third Degree—Class A Misdemeanor") was inadequately defined in Instruction No. 5 (MAI—CR 2d 33.00, "Definitions—General Form") because it failed to reflect defendant's defense theories of "imperfect self-defense" and "over-provocation", is faulty for a number of reasons. First and foremost, defendant's contention that the definition of "recklessly" did not properly reflect or take into account his defense theories of "imperfect self-defense" and "over-provocation" suffers from the same legal infirmities which beset his first point and is rejected for the same reasons. Additionally, the definition of "recklessly" contained in Instruction No. 5 followed, word for word, the definition of the term set forth in MAI—CR 2d 33.01 ("Definitions—Specific") and Section 562.016.4, RSMo 1978, its statutory source. Rule 28.02(c) mandates that whenever there is an MAI—CR instruction "applicable under the law to the facts", it "shall be given or used to the exclusion of any other on the same subject". Paragraph "First" of Instruction No. 10, submitting assault in the third degree, required the jury to find beyond a reasonable doubt that "defendant recklessly caused physical injury to Gary L. Church, Jr. by stabbing him." Clearly the term "recklessly" was not improperly defined in the frame of reference in which it was used in Instruction No. 10.

■ Defendant's third point is leveled at the trial court's failure to define "deadly force" [5] used in Instruction No. 6 (MAI—CR 2d 2.41.1, "Justifiable Use of Force in Self-Defense") and in omitting to include an optional paragraph in said instruction. Neither of these matters was raised at trial nor included in defendant's motion for new trial. This being the case, neither has been preserved for appellate review. Rule 28.03; *State v. McGee*, 592 S.W.2d 886, 887–88 (Mo.App. banc 1980); and *State v. Hollis*, 584 S.W.2d 137, 145 (Mo.App.1979). Defendant has not asked this court to review the matters raised in point three as "plain error" under Rule 29.12(b) or suggested that "manifest injustice" or a "miscarriage of justice" has resulted. "Prejudicial error" and "plain error" are not synonymous terms, and "prejudicial error" does not inevitably rise to the level of "plain error". *State v. Miller*, 604 S.W.2d 702, 705 (Mo. App.1980). In particular, instructional error does not rise to the level of "plain error" unless the trial court has so misdirected or failed to instruct the jury as to cause "manifest injustice" or a "miscarriage of justice." *State v. Murphy*, 592 S.W.2d 727, 733 (Mo. banc 1980); *State v. Fletcher*, 598 S.W.2d 523, 525 (Mo.App.1980); and *State v. Tilley*, 569 S.W.2d 346, 349 (Mo.App.1978). According to the argument tendered by defendant, both aspects of point three are inextricably bound to his misconceived defense theories of "imperfect self-defense" and "over-provocation" whose legal frailties have previously been demonstrated. Defendant's third point will not be reviewed under the aegis of "plain error" as defendant has failed to demonstrate and this court is unable to perceive any "manifest injustice" or "miscarriage of justice" worked by the error alleged therein.

■ Defendant's fourth point charges the trial court erred in not considering defendant's request for probation. Immediately following allocution, entry of judgment and pronouncement of sentence, defendant asked the trial court to consider placing him on probation. The trial court, for some unexplainable reason, concluded

---

5. See *State of Missouri v. Cass*, 614 S.W.2d 784, handed down by the Missouri Court of Appeals, Eastern District, 1981, holding that failure to define "deadly force" used in connection with an instruction of justifiable use of force in defense of third persons was not reviewable as "plain error".

that defendant could not be placed on probation if an appeal was taken. Upon being advised that defendant intended to file a notice of appeal, the trial court refused to consider defendant's request to be placed on probation. No case, rule or statute has been cited or found to support the trial court's position that defendant could not be placed on probation if an appeal was taken. Although a trial court prior to enactment of The Criminal Code had a right to consider probation, it was not required to do so, and its determination not to place a defendant on probation was not subject to appellate review. *Benson v. State*, 504 S.W.2d 74, 76 (Mo.1974). As *Benson* was decided in 1974 it merits close examination in light of certain far-reaching changes effected by The Criminal Code which was adopted in 1977 and became effective January 1, 1979. Nothing is found in The Criminal Code or Section 549.058, et seq., RSMo 1978, which commands or mandates that a trial court must consider probation. Be that as it may, Chapters 557 (General Sentencing Provisions) and 559 (Probation) of The Criminal Code, beyond peradventure, bespeak of and provide for a more active role by trial courts in the sentencing process. Probation is obviously viewed as one of several devices in the sentencing inventory available to a trial court in fulfillment of its role in the sentencing process. This does not mean or imply that the reasons which prompt a trial court to refuse to consider or grant probation are subject to appellate review. *Benson v. State, supra*, still controls in these respects. Nor does it impose a duty upon a trial court to state of record that it has considered and refused to grant probation. It does, however, presuppose that the trial court has fulfilled its role in the sentencing process in accordance with the spirit of The Criminal Code and where, as here, the record affirmatively shows that the trial court erroneously concluded that it would not *even* consider probation, remand for the limited purposes of resentencing is a proper curative measure. Doing so merely gives a trial court an opportunity, in a sui generis situation such as the one at hand, to exercise its discretion one way or the other.

The granting of such limited relief is neither inconsistent with nor offensive to the holding in *Benson v. State, supra*, when read in light of The Criminal Code. Remand of this case for the limited purpose of resentencing is not to be construed as suggesting or implying that the trial court should or should not grant probation. That is a matter which continues to rest in the absolute discretion of the trial court and is not subject to appellate review. *Benson v. State, supra*. Remand for the limited purpose of resentencing, even though the original sentence stands unchanged, recognizes the right of the trial court to exercise its discretion regarding probation, and, at the same time preserves the integrity of the role of the trial court in the sentencing process.

Defendant's fifth and final point charges the trial court erred in not obtaining a presentence investigation report before imposing sentence. This point vividly demonstrates a patent inconsistency between a section of The Criminal Code which became effective January 1, 1979, and a corresponding provision of a Rule of Criminal Procedure. Present Rule 29.07(a)(1), adopted June 13, 1979, effective January 1, 1980, and applicable to felonies, reads, in part, as follows:

> "*When a probation officer is available to the court, such probation officer shall, unless otherwise directed by the court, make a pre-sentence investigation and report to the court before the imposition of sentence or the granting of probation.*" (Emphasis added.)

The source of present Rule 29.07(a)(1) was prior Rule 27.07(b), which, insofar as here pertinent, read as follows:

> "*When a probation officer is available to any court having original jurisdiction to try felony cases and to the St. Louis Court of Criminal Correction, such probation officer shall, unless otherwise directed by the court, make a presentence investigation and report to the court before the imposition of sentence or the granting of probation.*" (Emphasis added.)

Those portions of the respective rules set forth above are, for all practical purposes, synonymous. The language in prior Rule 27.07(b) was consistently construed in a long line of cases as making the use of presentence investigation reports by the trial court discretionary rather than mandatory. *State v. Maloney*, 434 S.W.2d 487, 496 (Mo.1968); *Allen v. State*, 582 S.W.2d 361, 362 (Mo.App.1979); *State v. Woodfin*, 559 S.W.2d 273, 278 (Mo.App.1977); *State v. Goforth*, 535 S.W.2d 464, 468 (Mo.App.1976); *State v. Webb*, 527 S.W.2d 728, 730 (Mo. App.1975); and *Hamilton v. State*, 490 S.W.2d 363, 365–6 (Mo.App.1973).

 Section 557.026, RSMo 1978, effective January 1, 1979, insofar as here pertinent, reads as follows:

"When a probation officer is available to any court, such probation officer shall. *unless waived by the defendant*, make a presentence investigation in all felony cases and report to the court before any authorized disposition under section 557.-011." (Emphasis added.)

Section 557.026, *supra*, leaves no doubt that a presentence investigation and report is required in all felony cases before the trial court can make an authorized disposition unless (1) a probation officer is not available to the court or (2) defendant waives a presentence investigation and report. The language contained in Section 557.026, *supra*, is neither reconcilable nor synonymous with its counterparts in present Rule 29.-07(a)(1) and prior Rule 27.07(b). Present Rule 29.07(a)(1), which was adopted and became effective after the enactment and effective date of Section 557.026, *supra*, has never been annulled or amended by any subsequent legislative enactment limited to that purpose, is procedural, and is patently inconsistent with Section 557.026, *supra*. Under these circumstances, present Rule 29.07(a)(1) supersedes Section 557.026, *supra*. Mo.Const. Art. V, § 5; *State ex rel. Peabody Coal Co. v. Powell*, 574 S.W.2d 423 (Mo.banc 1978). Judicial construction of prior Rule 27.07(b) posited on virtually identical language as that contained in present Rule 29.07(a)(1) persuades this court that present Rule 29.07(a)(1) makes the use of presentence investigations and reports by the trial court in felony cases discretionary rather than mandatory. See: *State v. Maloney, supra; Allen v. State, supra; State v. Woodfin, supra; State v. Goforth, supra; State v. Webb, supra*; and *Hamilton v. State, supra*. Moreover, this court sees no escape from the conclusion that present Rule 29.07(a)(1) takes precedence over Section 557.026, *supra*. *State ex rel. Peabody Coal Co. v. Powell, supra*. Admittedly, present Rule 29.07(a)(1) is not in tune with the spirit of Section 557.026, *supra*. However, this court is not at liberty to give Section 557.026, *supra*, precedence over present Rule 29.07(a)(1), and it rests with the Supreme Court through the exercise of its rule making power to bring the two into harmony if it sees fit to do so.

Judgment of conviction affirmed, but cause remanded for the limited purpose of resentencing consistent with this opinion.

All concur.